**Nora D. SATTY**

v.

**NASHVILLE GAS COMPANY.**

**No. 74–288–NA–CV.**

United States District Court,
M. D. Tennessee,
Nashville Division.

Nov. 4, 1974.

Robert W. Weismueller, Jr., Tom H. Williams, Jr., Nashville, Tenn., for plaintiff.

Charles K. Wray, Bass, Berry & Sims, Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, District Judge.

This cause of action was brought pursuant to Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) alleging sex discrimination in defendant's employment policies with respect to pregnancy. Plaintiff seeks back wages, lost benefits, attorney's fees and injunctive relief. Plaintiff further alleges that her employment was terminated because she complained about the allegedly discriminatory policies.

There is no dispute as to the jurisdiction of this court under Title VII of the Civil Rights Act of 1964.

Originally the cause was brought as a class action. However, the parties stipulated that the number of persons whom plaintiff may properly represent is not sufficiently numerous to permit maintenance of a class action under Rule 23, Federal Rules of Civil Procedure.

Simultaneously with filing of this action, plaintiff filed a motion for entry of a preliminary injunction requiring defendant to reinstate her as an employee and enjoining defendant from retaliatory measures. A hearing was held upon plaintiff's motion on July 10, 1974. At the close of the hearing, the court determined that a preliminary injunction would not be issued because plaintiff failed to establish that irreparable harm would be suffered by denial of the motion and it appeared that monetary damages could compensate plaintiff for any injury she might suffer.

The threshold question is whether or not defendant's employment policies, with respect to pregnancy, constitute unlawful sex discrimination.

### I.

■ The parties have stipulated as to the following statement describing defendant's policy of health insurance:

As a condition of employment, every employee of Nashville Gas Company is required to be covered under a group life, health and accident policy issued by Provident Life and Accident Insurance Company. The cost of such policy is borne half by the Company and half by the employees. In addition to other health and hospitalization benefits, said policy also provides for payment of 50% of the customary and reasonable fees incurred in connection with pregnancy. Such pregnancy benefits apply to female employees and dependent wives of male employees. Although the insurance plan terminates with respect to an employee at the time such employee's active employment ceases, the maternity benefits continue to apply for up to nine months after termination and if such benefits would have been payable had delivery occurred on the date such active employment ceases.

Plaintiff's theory is that defendant's group insurance program discriminates on the basis of sex because a reduced benefit is paid in the case of pregnancy when compared with hospitalizations for other causes. There is no doubt that the insurance program makes a distinction in the case of pregnancy as to the extent of benefits available. However, the pregnancy distinction applies to both male and female employee-beneficiaries of the plan. The insurance proceeds are paid on behalf of the employee, male or female, according to a single formula in

all pregnancy cases. Thus, for a male employee whose wife is pregnant, the insurance benefit is the same as provided to a pregnant female employee such as plaintiff.

The parties further stipulated that pregnancy is a temporary disabling condition resulting from a normal bodily function. In this case the plaintiff had a normal pregnancy and childbirth. Also, the parties have agreed that defendant does not have a disability insurance plan for its employees. This is not a situation where a female employee receives a lesser benefit for her disability than those received by males. Defendant's insurance plan pays no benefit whatsoever for disabilities. The only benefit under defendant's insurance plan is for payment of medical expenses. The issue in this case is whether defendant's insurance program discriminates unlawfully between male and female employees in the payment of medical expenses.

No evidence has been introduced to show a failure on defendant's part to comply with the Equal Employment Opportunity Commission guidelines on fringe benefits. Title 29, Code of Federal Regulations, Section 1604.9(d) provides:

> It shall be an unlawful employment practice for an employer to make available benefits for the wives and families of male employees where the same benefits are not made available for the husbands and families of female employees; or to make available benefits for the wives of male employees which are not available for female employees; or to make available benefits to the husbands of female employees which are not available for male employees. An example of such an unlawful employment practice is a situation in which wives of male employees receive maternity benefits while female employees receive no such benefits.

So far as the issue relating to the insurance program is concerned, the court finds no distinction in the application, operation, or effect of the insurance plan to support a finding of unlawful discrimination by reason of sex since all employees, male or female, receive the same benefit.

II.

It has been and is now the policy of defendant to require pregnant employees to take maternity leave. Although defendant's "Employee Policy Manual," of September 27, 1971, presents availability of maternity leave in permissive terms, to wit:

> In case of pregnancy, an employee, upon written request *may* be granted a leave of absence . . . (emphasis added)

actual practice demonstrates that a pregnant employee may not decline to accept maternity leave, and still retain employee affiliation with the defendant company. Once an employee is placed in maternity leave status, she may remain in that status for up to one year. There is no statement of policy concerning the status of an employee on maternity leave who is unable to return to work after one year. A fair inference is that such an employee would be terminated.

Once an employee is classified as being in a leave status, i. e., leave of absence or pregnancy leave, it is defendant's policy to offer such an employee temporary work, when available, until a permanent position is open. After an employee returns from leave status and acquires permanent employment, the defendant credits such person with seniority previously accumulated for the purposes of pension, vacation, and other employee benefits based on seniority. However, defendant does not credit an employee returning from leave status who is subsequently classified as a temporary or permanent employee with previously accumulated seniority for the purpose of bidding on job openings. The significance of this policy is illustrated in the present case where plaintiff returned from pregnancy leave as a

temporary employee after more than four (4) years of continuous employment, next preceding maternity leave, and defendant failed to place her in one of several permanent job openings. All of these openings were filled by other employees credited with greater job-bidding seniority even though plaintiff had the earlier date of initial employment. It appears that seniority is the primary factor in the job bidding process and failure to credit plaintiff with seniority for this purpose is the sole reason she failed to gain a permanent position with defendant following her return from maternity leave.

Defendant asserts that the job bidding policies are the same for all employees, male or female, returning from a leave status.

The gravamen of defendant's contention is that only pregnant women are required to take leave. In all cases other than maternity the decision to take leave is entirely a voluntary matter with each employee.

It further appears that defendant maintains a policy of allowing leave in connection with non-work related illness or injury without loss of seniority or other indicia of good standing on the part of an employee where the non-work related disability does not concern pregnancy. It is only in the case of pregnancy that an employee is denied the opportunity to take "sick leave."

Defendant does not have a disability insurance plan for its employees, but does provide a specific number of sick leave days based on the employee's seniority. Employees, like plaintiff, who are placed on pregnancy leave are not paid for accumulated sick leave, but are paid for accumulated vacation time. Defendant's policy has been to allow employees who have been absent due to illness or non-work related disabilities to take "sick leave." Only in the case of pregnancy is an employee denied the right to take sick leave. It further appears that employees returning from long periods of absence due to non-job related injuries do not lose their seniority and in fact their seniority continues to accumulate while absent.

Defendant asserts that the classification of employees as pregnant employees and non-pregnant employees for application of the aforementioned policies does not constitute unlawful sex discrimination under Title VII. Defendant acknowledges that a number of court decisions under Title VII, and the position of the Equal Employment Opportunity Commission, indicate that policies affording different treatment for temporary disability due to pregnancy than for all other non-work related disabilities is discrimination based on sex. However, it is asserted that the recent United States Supreme Court decision in Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), determined that disparity of treatment between pregnancy related disability and other disabilities does not constitute sex discrimination. The primary source for defendant's argument is found in footnote 20 to the Court's opinion.

If defendant's reliance on the *Geduldig* decision were proper, then it would not be necessary to consider other cases in this area. For the reasons stated below, the court concludes that defendant's reliance on the *Geduldig* decision is not well founded.

In *Geduldig* the sole question presented was whether classifications under a disability insurance program established and administered under the laws of California violated the Equal Protection Clause of the Fourteenth Amendment. The asserted constitutional violation was based on the exclusion of disabilities in connection with normal pregnancies from coverage under the insurance program. The United States Supreme Court held that the exclusion of normal pregnancies from benefit coverage did not involve improper state action. The standard applied by the Court to test the constitutional question was one of "reasonableness." There was no question concerning the legitimacy of the state's action in establishing the disability in-

surance program to supplement the workman's compensation program. The analytic key to the *Geduldig* decision is found in the following language:

> This Court has held that, consistently with the Equal Protection Clause, a State "may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. . . . The legislature may select one phase of one field and apply a remedy there, neglecting the others. . . ."
>
> . . . Particularly with respect to social welfare programs, *so long as the line drawn by the State is rationally supportable,* the courts will not interpose their judgment as to the appropriate stopping point. "[T]he Equal Protection Clause does not require that a State must choose between attacking every aspect of a problem or not attacking the problem at all." . . . . (417 U.S. 484, 495, 94 S.Ct. 2485, 2491, 41 L.Ed.2d 256, 263–264. [emphasis added])

In finding a rational basis for the exclusion of normal pregnancies under the California disability insurance program, the Court noted several factors relating to the fiscal soundness of the program which were found sufficient.,

It should be noted that *Geduldig* did not involve an assertion of unlawful action under the Civil Rights Act of 1964. The plaintiff in *Geduldig* was not an employee nor prospective employee claiming unlawful discrimination by reason of the State's employment practices. The question of whether the California disability insurance program sufficiently affects interstate commerce so as to be subject to the Civil Rights Act of 1964 does not appear to have been litigated.

In discussing the rational basis of California's exclusion of pregnancy benefits, the Court referred to the cases of Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225, and Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583. Both of these cases were brought under the Equal Protection Clause of the Fourteenth Amendment and in each case the Court found there was no rational basis for discrimination. In the *Reed* case the Court found a provision of the Idaho Probate Code giving preference to males in appointment of administrators to be violative of the Equal Protection Clause. Writing for the Court, the Chief Justice stated the test to be applied in Equal Protection type cases:

> . . . [T]his Court has consistently recognized that the Fourteenth Amendment does not deny to States the power to treat different classes of persons in different ways. . . . The Equal Protection Clause of that amendment does, however, deny to States the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." (404 U.S. 71, 75, 92 S.Ct. 251, 253, 30 L.Ed.2d 225, 229).

In the final analysis the Court concluded that the Idaho statute had no rationale sufficient to sustain the different classifications established for men and women.

In the *Frontiero* decision the Court again found there was no rational basis for the distinction drawn in the payment of benefits between male and female members of the military services.

The standard applicable to state action under the Equal Protection Clause of the Fourteenth Amendment is distinct from the lawful power of Congress to establish different standards for conduct affecting interstate commerce. Under the Commerce Clause the Congress has plenary power to regulate all aspects of interstate commerce. Gibbons v. Ogden, 9 Wheat. (22 U.S.) 1, 6

L.Ed. 23 (1824); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); Heart of Atlanta Motel v. United States, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); Maryland v. Wirtz, 392 U.S. 193, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968). In effect Congress has established a standard for testing employment discrimination that goes beyond the standard of "reasonableness" traditionally applied to the States under the Equal Protection Clause of the Fourteenth Amendment.

To further illustrate the distinction between the two standards of permissible discrimination, it is helpful to consider the legislative history of Title VII. Title 42 U.S.C. Sec. 2000e et seq. presents the standard to be applied in cases of employment discrimination. In 1972 Congress amended Title VII by deleting a portion of 42 U.S.C. Sec. 2000e (c) which originally provided:

> . . . but shall not include an agency of the United States, or an agency of a State or political subdivision of a State, except that such term shall include the United States Employment Service and the system of State and local employment services receiving Federal assistance . . .

The effect of the 1972 amendment was to broaden the scope of Title VII and extend the employment standard to the States.

■ The case of Maryland v. Wirtz, *supra,* demonstrates the power of Congress under the Commerce Clause to prescribe the standard against which conduct will be gauged if that conduct affects interstate commerce. In noting that States are susceptible to the congressionally prescribed standards, the Court stated:

> But while the commerce power has limits, valid general regulations of commerce do not cease to be regulations of commerce because a State is involved. If a State is engaging in economic activities that are validly regulated by the Federal Government when engaged in by private persons,

the State too may be forced to conform its activities to federal regulations. (392 U.S. 193, 196, 88 S.Ct. 2017, 2024, 20 L.Ed.2d 1020, 1031)

The congressional standard to be applied under the Civil Rights Act of 1964 is stated in 42 U.S.C. Sec. 2000e–2 for those cases alleging discriminatory employment practices. The only exception to the standard that could have relevance in the instant case is found in 42 U.S.C. Sec. 2000e–2(e)(1) which provides that a classification based on sex, etc., is permissible *if* there is:

> . . . a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise . . .

In light of the Maryland v. Wirtz decision, *supra,* it would appear that the proper standard to be applied in all employment discrimination cases properly brought under Title VII is the congressionally mandated standard outlined above.

All sex discrimination cases do not fall within the same category. As this discussion has illustrated, that are at least two classifications of sex discrimination cases: those arising under the Equal Protection Clause of the Fourteenth Amendment and those arising under Title VII of the Civil Rights Act of 1964. These two categories involve the application of different standards for the determination of whether distinctions based on sex are permissible. Under the Equal Protection Clause there need be only a "reasonable basis" for the legislative determination. However, under the Civil Rights Act of 1964, there must be an actual business necessity for employment policies that discriminate on the basis of sex. See Moody v. Albemarle Paper Co., 474 F.2d 134 (4th Cir. 1973); Diaz v. Pan American World Airways, Inc., 442 F.2d 385 (5th Cir. 1971); Williams v. American St. Gobain Corp., 447 F.2d 561 (10th Cir. 1971).

The *Geduldig* case was brought under the Equal Protection Clause and not

under Title VII. Thus, the standard involved was one of legislative reasonableness. Since *Geduldig* was not an employment case, it would be improper to draw a negative inference as to the power of Congress to establish a different standard of permissible discrimination for employers admittedly affecting interstate commerce.[1] For these reasons, defendant's contention that *Geduldig* controls in the instant case is rejected.

■ In the opinion of this court, defendant's employment practices are discriminatory in the following respects: (1) only pregnant women are required to take leave and thereby lose job bidding seniority and no leave is required in other non-work related disabilities; and (2) only pregnant women are denied sick leave benefits while in all other cases of non-work related disability sick leave benefits are available. Dessenberg v. American Metal Founding Co., 8 FEP Cases, 291 (D.C.Ohio); Hutchinson v. Lake Oswego School District, 374 F. Supp. 1056 (D.C.1974); Gilbert v. General Electric Co., 375 F.Supp. 367 (D.C. 1974). Defendant has introduced no proof of any business necessity in support of these discriminatory policies. The court must therefore assume no justification exists.

### III.

■ Plaintiff further alleges that defendant's action in not holding her job open for her while she was on pregnancy leave constitutes discrimination based on sex. This allegation must be considered in light of certain business factors.

Plaintiff's principal duties prior to being placed on maternity leave involved the posting of merchandise accounts. It appears that defendant was considering prior to plaintiff's pregnancy, and has now initiated, the transfer of certain accounting functions to its computer processing department. Further, defendant has undertaken to discontinue its merchandise business. Both of these factors suggest a legitimate basis for the decision not to hold plaintiff's job open in the accounting department. The court discerns no discriminatory conduct by defendant with reference to this issue.

### IV.

■ It is further asserted that defendant's action in requiring plaintiff to begin her pregnancy leave on December 29, 1972, was arbitrary and in violation of Title VII.

Although defendant's "Employee Policy Manual" suggests that pregnancy leave commence during the fourth month, actual practice shows that no set time is arbitrarily established to determine when leave shall be taken. Defendant's Vice President-Personnel has stated that several factors are weighed when reaching the decision to start pregnancy leave. These factors include: the opinion of the employee's doctor; the employee's duties; work area; and

1. In *Geduldig* the minority opinion indicates a willingness to impose the congressional standard manifest in Title VII as the appropriate test under the Equal Protection Clause. The minority opinion further indicates a willingness to find State classifications based on sex to be unconstitutional *per se*. However, the majority opinion expressly relies on the "rational basis" formula as set forth in the traditional line of cases under the Equal Protection Clause. The dispute within the Court in *Geduldig* does not appear to be whether California's statute discriminates on the basis of sex, but rather the dispute focuses on whether that discrimination is permissible under the Fourteenth Amendment, i. e., it is a question of legislative reasonableness. The dissenting opinion ultimately rests on the conclusion that the State lacked a rational basis for the distinctions drawn. References to the provisions of Title VII and Equal Employment Commission decisions and regulations by the minority appear to furnish fuel for the proposition that the standard of reasonableness under the Equal Protection Clause should be strengthened to conform with the congressional statement of policy. Rejection of that argument by the majority does not rationally suggest that the standard established under Title VII is weakened or in any way diminished in a case properly brought under the Civil Rights Act of 1964.

degree of public contact. Although the Vice President-Personnel was to be the final judge of when these factors should dictate the commencement of leave, there is no showing of abuse in reaching that decision.

Following employee holidays on Friday, December 22, and Monday, December 25, 1972, plaintiff failed to report for work on the next four consecutive work days. The proof shows that she was having a problem with water retention at that time and that she also had a common cold. After being placed on maternity leave on December 29, 1972, plaintiff gave birth to her child on January 23, 1973, some twenty-five days after maternity leave had commenced.

It is of paramount significance that defendant's policies as actually practiced do not fix an arbitrary month or date on which pregnancy leave must begin. The facts in each situation are considered on an individual basis. Given plaintiff's problem with water retention and the subsequent birth of her child on the 25th day of maternity leave, defendant's action does not appear to be arbitrary or irrational. See Cleveland Board of Ed. v. LaFleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974).

### V.

■ A further issue in this cause is whether the termination of plaintiff's temporary employment on April 13, 1973, was in retaliation for her complaining about defendant's employment policies with respect to pregnancy.

Plaintiff returned to work with defendant as a temporary employee on March 14, 1973. It was defendant's policy to place women returning from maternity leave in available temporary positions until a permanent opening was awarded on the basis of job bidding. Plaintiff worked as a temporary employee until April 13, 1973, when the temporary project to which she was assigned was completed. Plaintiff continued to apply for permanent job positions but was frustrated in her efforts by those policies causing her to lose credit for accumulated seniority in job bidding. The court finds no evidence of retaliatory termination of plaintiff for assertion of her civil rights. However, it is clear that plaintiff's termination request was the result of her inability to retain permanent employment following forfeiture of her job bidding seniority rights by defendant.

### VI.

The court concludes that plaintiff is entitled to the following relief:

1. Recovery of sick leave benefits that should have been paid during her maternity leave. Plaintiff is also entitled to have sick leave benefits credited and accumulated from the time she returned from maternity leave on March 14, 1973.

2. Back wages from March 14, 1973, until the present. The back wages shall be computed on the rate of pay earned by plaintiff on December 29, 1972, plus any across the board increases which may have occurred since that time. However, back pay will be reduced by amounts paid for temporary work with defendant, unemployment compensation received from the State of Tennessee, and wages from other employment.

3. Reinstatement as a permanent employee as of the date that the first permanent position after March 14, 1973, was filled with another employee having less seniority than plaintiff. Plaintiff will be credited with full seniority from the date of her initial hiring by defendant.

4. Recovery of reasonable attorney's fees.

The court authorizes the defendant to submit affidavits concerning plaintiff's status upon reinstatement. If there has been a reduction in force by defendant which would have caused plaintiff's termination sometime after March 14, 1973, based on seniority computed from the date of her initial hiring, that fact may be shown to properly adjust the relief awarded plaintiff. Such affidavits

should also reflect applicable "bumping" procedures, if any, to clarify whether or not plaintiff would have been entitled to a lesser position in defendant's company. Defendant may submit other data relating to the entitlement of plaintiff under the terms of this memorandum. However, defendant shall furnish copies of such affidavits to plaintiff's counsel and plaintiff shall have an opportunity to respond. The court will review such affidavits as are submitted relative to the determination of plaintiff's reinstatement and back wages, and if any material issue of fact is presented, a further hearing will be ordered on that matter. Defendant is allowed fifteen (15) days for the submission of affidavits and plaintiff shall have ten (10) days following defendant's submission to file counter-affidavits.

Counsel for plaintiff will submit an order consistent with the provisions of this memorandum.