Darlene **TEMPLETON** and **Superior Court of the State of California, County of Imperial Juvenile Court,** Plaintiffs,

v.

**Ronald WITHAM and Vicki Witham, Jointly and severally, Defendants.**

Civ. No. 84–1099–T(M).

United States District Court, S.D. California.

Oct. 5, 1984.

John F. Weis, Cardenas & Fifield, El Centro, Cal., for plaintiff Darlene Templeton.

Thomas M. Fries, County Counsel, Steven M. Basha, Asst. County Counsel, El Centro, Cal., for plaintiff Imperial County Juvenile Court.

J.P. Harris, II, Salem, Or., George E. Fleming, McInnis, Fitzgerald, Rees, Sharkey & McIntyre, San Diego, Cal., for defendants.

## DECLARATORY JUDGMENT

TURRENTINE, Senior District Judge.

Plaintiffs Darlene Templeton and the Imperial County Juvenile Court ("the California court") brought this action under 28 U.S.C. § 1738A, which is part of the Parental Kidnapping Prevention Act of 1980 ("PKPA"), P.L. 96–611, 94 Stat. 3569, for a declaratory judgment that the California court has jurisdiction to decide the placement of a minor, Debra Kay Templeton, the natural daughter of the plaintiff.

Debra was born in Imperial County on August 23, 1979. Because of the state of her mental health, Darlene felt herself unable to care for the infant, and went to the Imperial County Probation Department. She asked them to take care of the child, and suggested that little Debra be placed with her sister-in-law, Vicki Witham, the defendant, who resides with her husband in Salem, Oregon.

A petition to have Debra declared a dependent child of the state was filed in the California court on October 2, 1979, and a proceeding commenced the following day.

The court placed Debra in the custody of Vicki Witham pending the outcome of the proceeding, and the infant went to Oregon with her aunt. After several continuances, Debra was declared a dependent child of the state and placed in the custody of the Withams.

On March 17, 1982, the California court ordered Vicki Witham to return the child to Imperial County, where she was to be placed in a foster home and eventually reunited with her mother. The Withams refused to comply with the order and on September 7, 1982, filed a petition for adoption in the Circuit Court of Oregon, Marion County Juvenile Department ("the Oregon court"). On October 6, 1982, the Withams moved the Oregon court to take jurisdiction over Debra and her placement.

The Withams also contested the jurisdiction of the California court, but their motion to dismiss was denied by the Imperial County Juvenile Court on February 25, 1983. Plaintiffs here moved to have the Oregon court dismiss the Witham's petition. The California court issued a bench warrant for Debra's arrest on March 8, 1983. On April 13, the Oregon court signed an order abating that warrant and directing Oregon authorities to disregard it. On July 26, the Oregon court declared that jurisdiction over Debra lay with it, and that California's jurisdiction had lapsed because of its failure to comply with pertinent state laws. On September 7, 1983, the Oregon court incorporated its opinion of July 26 in an order denying Darlene Templeton's motion to dismiss the Witham's petitions and reasserted its jurisdiction to decide the placement of Debra.

Since the state courts had maneuvered themselves into a state of jurisdictional gridlock, the plaintiffs brought this federal action for a declaration as to which state court has jurisdiction pursuant to 28 U.S.C. § 1738A. The parties have stipulated to a stay of state court proceedings pending the outcome of this case.

Section 1738A is an addition to the Full Faith and Credit Statute, 28 U.S.C. § 1738, added in 1980 as part of the PKPA to

specifically address the problem of interstate child custody battles. This court has jurisdiction under that law to determine whether Oregon or California has power over the custody of Debra Kay Templeton. 28 U.S.C. § 1331; *See Flood v. Braaten,* 727 F.2d 303, 311–13 (3d Cir.1984). Resolution of this issue requires consideration of three subsidiary questions. First, did California initially have jurisdiction to decide the placement of Debra? Second, did such jurisdiction continue until the date California ordered the return of the child in March of 1982? Third, if California does not have jurisdiction over Debra, does Oregon? We will address these questions in turn.

## I. CALIFORNIA'S INITIAL JURISDICTION.

■ Unlike the principal state legislation on the subject, the Uniform Child Custody Jurisdiction Act ("UCCJA"), Cal.Civ.Code § 5150 *et seq.,* the PKPA does not allow more than one state to exercise jurisdiction over the placement of a child at any given time. *See Flood v. Braaten, supra,* 727 F.2d at 311–12. Section 1738A(c) of Title 28 provides that a state court has jurisdiction to decide the placement of a child if: (1) such court has jurisdiction under that state's own laws; and (2) another of a specified list of conditions is met, for example that the state be the home state of the child on the date the proceeding commences. 28 U.S.C. § 1738A(c)(1) & (c)(2)(A)(i).

Thus the PKPA does not present a case of clear-cut federal preemption, since it expressly incorporates state law. In deciding whether California has exercised jurisdiction over Debra Kay Templeton we are initially referred back to the state's own laws, specifically its version of the UCCJA and Cal.Welfare & Institutions Code § 300 *et seq.*

Section 5152(1)(a)(i) of the Cal.Civil Code requires that California be the home state of the child at the time the proceeding commences, and § 5151(5) defines the "home state" of a new-born infant as the state in which the child lived from birth with those acting as her parents. Debra was born in Imperial County on August 23, 1979 and lived there with her mother, plaintiff Darlene Templeton, until the California court began its consideration of her case in October of that year and handed the child over to her parental aunt, Vicki Witham. On October 2, 1979, the Imperial County authorities filed a petition to have Debra declared a dependent child of the state pursuant to Cal.Welf. & Inst.Code § 300(a). Defendants concede that the California court had jurisdiction on that date to decide the placement of Debra. Defendants' Brief at 5.

■ However, defendants argue that this jurisdiction had lapsed by April 25, 1980, the date on which the California court concluded the dependency proceeding and formally declared Debra a dependent child of the state. In support of this contention, defendants point out that as of April 3, 1980, Debra had lived in Oregon with the Withams for six months, and that under the law Oregon was her new "home state." This argument ignores the plain language of the statute. The UCCJA requires that California be the home state of the child on the date the proceeding *commences,* not the date the court renders a decision. Cal. Civ.Code § 5152(1)(a)(i). As The Supreme Court of California has written of this provision:

> "Exclusive continuing jurisdiction is not affected by the child's residence in another state of six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required.*"

*Kumar v. Superior Court,* 32 Cal.3d 689, 696, 186 Cal.Rptr. 772, 652 P.2d 1003 (1982) (emphasis in original; citation omitted). (The *Kumar* court did not address the additional requirements for interstate placements set out in Cal.Civ.Code § 265, discussed below.)

Defendants concede that the California court had jurisdiction when it began hearing Debra's case in October of 1979. The fact that the proceeding was continued a number of times and that a formal declaration of dependency was not issued until April 25, 1980 is irrelevant.

The second requirement of the PKPA has also been met, since it is merely that California be the "home state" of the minor "on the date of the commencement of the proceeding," 28 U.S.C. § 1738A(c)(2)(A)(i), and the federal law, conveniently, defines that term in the same manner as California's UCCJA. 28 U.S.C. § 1738A(b)(4). It is beyond cavil that California initially had jurisdiction to determine the custody of Debra Kay Templeton.

## II. CALIFORNIA'S CONTINUING JURISDICTION.

The next question is whether California took the necessary steps to maintain its jurisdiction over Debra until the March 17, 1982 hearing at which the Imperial County Juvenile Court ordered that she be returned to California and placed in a foster home pending reunification with her mother. The PKPA states that California's jurisdiction continues so long as (1) California remains the state of residence of any contestant for the child's custody and (2) the California court retains jurisdiction pursuant to state law. 28 U.S.C. § 1738A(d).

The first requirement is easily met in this case, since Debra's mother, Darlene, continues to reside in Imperial County.

The second requirement is not so easily satisfied, and it once again directs us back to consideration of a California law: the Interstate Compact on the Placement of Children ("ICPC" or "the Compact"), Cal. Civ.Code § 264 et seq. This statute, which is effective between California and any other state which has enacted the Compact, sets forth the circumstances under which California's juvenile courts have the power to place children out of state.

The ICPC requires that no child may be sent to another state for foster care until California has furnished the appropriate public authorities in the receiving state with written notice of the planned placement and the reasons therefor. Cal.Civ. Code § 265 Art. III(b). The Compact further requires that no child be sent to a foreign state until California has received approval from the receiving state's authorities in the form of a written notice that the placement does not appear to be contrary to the best interests of the child. Art. III(d).

In addition to these requirements, the Compact explicitly declares that no child be sent out of state "unless the sending agency shall comply with each and every requirement set forth in this article and with the applicable laws of the receiving state governing the placement of children therein." Art. III(a). To further underscore the seriousness and importance of this policy of prior notice, consultation and approval, Article IV of the Compact provides for penalties. Sending a child to another state in violation of the Compact not only constitutes a violation of the laws of both California and—in this case—Oregon, but it also imposes liability on the sending agency for any punishment or penalty either state's law might impose. Furthermore, such an out-of-state placement which does not comply with the terms of the ICPC constitutes "full and sufficient grounds for the suspension or revocation of . . . [the] legal authorization held by the sending agency which empowers or allows it to place or care for children." Cal.Civ.Code § 265 (Art. IV).

The California court and the Imperial County Probation Department did not comply with the requirements of the ICPC. No notice was given to Oregon authorities that Debra was placed in the Witham home in Salem in October of 1979 nor was any notice sent when that placement was formally approved on April 25, 1980. In fact, California did not send the papers required by the Compact until almost *two years* after Debra arrived in Oregon. The request that Oregon approve placement of the child in the Witham home was not signed by Imperial County authorities until January 20, 1982. Exs. H, 33. That form was received by Oregon on February 22,

1982 and signed March 31, 1982. Exs. H, 33.

The Imperial County Probation Department and Juvenile Court only attempted tardy compliance with the Compact after being chastised on May 18, 1981 by the California state office of the ICPC. That office wrote to Imperial County authorities stating:

It appears that the Interstate Compact was circumvented when this placement was made. ICPC is a *law* in California and Oregon. Please bring this case into compliance immediately.

Ex. 21 (emphasis in original). The state office again criticized Imperial County authorities on January 28, 1982. Ex. 34.

The significance of the California court's failure to comply with its own laws with respect to Debra's placement in Oregon increases when one examines the chronology of events in 1982. On January 20, Imperial County finally initiated procedures under the ICPC. Exs. H, 33. On March 17, the California court ordered that Debra be returned to California and placed in a foster home. On March 22, Oregon mailed to Imperial County the report on Debra and her progress in the Witham's care which the California authorities had requested. On March 31, Oregon formally approved the placement of Debra in Oregon with the Withams. The California court thus ordered that Debra be removed from Oregon and returned to California *before* it received the approval necessary to place Debra in Oregon in the first place!

During the period from when Debra was placed in Oregon in 1979 until her return was ordered in 1982, the California court operated in a vacuum. It had little if any knowledge about Debra or the Withams. In this period there was some correspondence between Oregon and California, but no information on the child or her foster parents was forthcoming because California had not complied with the ICPC. Imperial County was informed of its failure to follow the law as early as April 8, 1981. Ex. A to Defendants' Reply Brief. When Mrs. Witham tried to contact the juvenile

authorities in Salem about Debra, they had no choice but to refer her back to Imperial County since the latter had never complied with the Compact. Ex. I-1, 2 (October 10, 1979); Ex. L-2 (May 22, 1981).

Imperial County's own records reveal that when the decision to order Debra's return was being considered in December of 1981, California had "had no contact with the child since Mrs. Witham took the child to live with her in Oregon," had "no knowledge of Debra's development and her relationship with others in the home," and had "very little information on Mr. and Mrs. Witham and their own children." Ex. 31. Prior to making the decision to order Debra's return, the California authorities sought this information from Oregon. Oregon hastened to reply even before it had completed the paperwork for approving Debra's placement in Oregon, and sent its report on the child on March 22, 1982. The California court declined to wait until this information was available, and ordered a change in Debra's custody on March 17.

■ The ICPC does not expressly state that failure to follow its procedures for interstate placement will result in a loss of jurisdiction over the child, but this conclusion nonetheless follows for several reasons. First, the Compact makes it perfectly clear that the requirements of prior notice to the receiving state and approval therefrom are mandatory. Second, the statute declares that circumvention of those requirements constitutes a violation of both California and Oregon law, and is a sufficient reason to revoke the legal authority of the sending agency, in this case the Imperial County juvenile authorities.

Third, a conclusion that a failure to comply with the ICPC results in a failure of jurisdiction makes sense in light of the policies underlying the statute. The Compact allows a state to place children beyond its boundaries and continue to assert jurisdiction over them so long as the state cooperates in an orderly fashion with the foreign state. Its procedures are necessary to ensure that the receiving state assumes supervision of the child and those caring

for her and that the sending state remains apprised of the child's progress and condition so as to ensure that any decisions regarding the child operate in her best interests. In the case at hand, California's failure to abide by the Compact eventually led to a decision by a court which had had no contact with or information about the child for two years to remove the girl from the only home and family she has ever known and place her with strangers in a foster home nearly a thousand miles away. Although the merits of any placement decision made in this case are not before this court for review, and although this court sits to decide an issue of jurisdiction, and not to determine the best interests of the child, the way in which the California court reached its decision to order Debra's return provides both a good example of how a child should *not* be supervised and strong evidence that the Compact's rules must be followed if the interests of dependent children are to be served.

Finally, the California Attorney General has reviewed the inconsistencies between Welf. & Instit.Code § 368 and Article III of the ICPC and concluded that the authority to make an out-of-state placement is conditioned on compliance by the California authorities with Article III of the Compact. 61 Op.Atty.Gen.Cal. 535, 543 (1978). If the California court fails to give the proper notice and to await receipt of the receiving state's evaluation that the placement is not contrary to the child's best interests, then the court has no authority to send the child to another state. Although the California court's jurisdiction over Debra may not have evaporated the moment she crossed the state border on or about October 3, 1979, it certainly lapsed before the court tried to retrieve the child on March 17, 1982.

Plaintiffs argue that compliance with the ICPC is not necessary to retain jurisdiction over Debra, and claim that "only the home state requirement of the PKPA is necessary." Plaintiffs' Reply Brief at 12. A quick glance at the PKPA defeats this argument, for § 1738A(d) clearly states that a state court's jurisdiction "continues as long as the requirement of subsection (c)(1) continues to be met," and that provision requires that a state court "[have] jurisdiction under the law of such state."

The plaintiffs go on essentially to admit that the ICPC's requirements were not met. Plaintiffs' Reply Brief at 13, 14, 15, 16. They argue that this does not matter, because Oregon waived any right to object and conceded that California had retained jurisdiction when it approved the placement of Debra in Oregon in March of 1982. The interesting part of this argument is that it overlooks the fact that Debra was sent to Oregon in October of 1979, and that approval of a placement was not given until more than two years later. The piece of paper by which Oregon is supposed to have waived the right to object to California's circumvention of both California and Oregon law is a one-page standard form, bearing the name of the child, the parents, the Withams and the signatures of relevant authorities in each state. There is no indication on the form that the child had been in Oregon for more than two years. The form's language is all in the future tense and does not contemplate that a sending agency would fail to fill out the form and mail it before sending the child. There is no language on the form or in the statute on which it is based which even remotely suggests that a receiving state waives its right to demand compliance with the Compact by courteously expediting the processing of a request for interstate placement which is several years late. In fact, there is nothing in the Compact which says that states are free to disregard its terms when it is convenient to do so. As previously discussed, the Compact's requirements are mandatory.

Moreover, the California court did not rely on the March 31, 1982 approval of Debra's placement in Oregon as any sort of waiver because it did not even wait to get the form. The California court ordered that Debra be removed from the Withams' care and placed in an Imperial County foster home on March 17, before the Oregon authorities had provided the requested in-

formation on the child or approved the ICPC request. Oregon did not receive notice of that March 17 order until after it had sent its documents to California.

█ The failure of the Imperial County juvenile authorities to follow California's own laws means that the requirement of 28 U.S.C. § 1738A(c)(1) has not been fulfilled, and under subsection (d) of that statute jurisdiction therefore lapses. Since California failed to exercise jurisdiction consistent with federal law, Oregon had no obligation under the PKPA to decline jurisdiction over Debra. § 1738A(g).

## III. OREGON'S JURISDICTION.

█ Oregon may assert jurisdiction to decide the placement of the child and modify California's custody decision if it has jurisdiction under its own and federal laws to make child custody decisions and if California has failed to properly maintain its jurisdiction. 1738A(f). This once again refers us back to subsection (c) of the PKPA.

The first step is again the determination whether Oregon has jurisdiction under its own laws to decide the matter. This need not detain us long, for Oregon's prerequisites to jurisdiction parallel those of California and the PKPA. Moreover, plaintiffs have not contested the assertion of jurisdiction of Oregon except insofar as it is barred by California's jurisdiction over the child, and we have already dealt with that matter. The Court finds that the Circuit Court of Oregon, Marion County Juvenile Department, has jurisdiction under Oregon Revised Statutes § 109.730 *et seq.*

We now turn to whether Oregon has fulfilled the federal requirements for asserting jurisdiction over Debra. Once again, we have the 28 U.S.C. § 1738A(c)(2)(A)(i) home state requirement. Since she had resided in the state since October 3, 1979, there is no doubt that Debra's home state was Oregon on April 13, 1983 when Oregon Judge Norblad vacated California Judge Lehnhardt's bench warrant for Debra's arrest. The same answer obviously applies with respect to July 26, 1983, when the Oregon court further

ruled that it had jurisdiction over the child. This fulfills the requirements of the PKPA. The court notes, however, that Oregon would also have jurisdiction under § 1738A(c)(2)(B) and (c)(2)(D) because no other state would have jurisdiction under the PKPA and it would be in the best interests of the child for Oregon to assume jurisdiction.

## CONCLUSION

As Judge Norblad of the Oregon court noted in his memorandum addressing a more limited version of the issue before this court, had California acted in accord with its own laws there would be no doubt that it had continuing jurisdiction over Debra Kay Templeton to which the Oregon authorities would have been bound to defer. Ex. 52c. Yet the juvenile authorities in Imperial County flouted both the Interstate Compact and their own state office of ICPC compliance for more than two years. The Court is sympathetic to the demands which the national child custody situation imposes on the limited resources of state and county agencies. However, the terms of the law are clear and they must be obeyed. The haphazard manner in which Debra was "supervised" by Imperial County authorities after she was sent out of California is cogent testimony to both the need for such laws as the ICPC, the UCCJA and the federal PKPA, and to the importance of following them.

It is worth noting that the errors discussed above were not the only ways in which the Imperial County authorities failed to live up to the law. The social workers should have prepared plans for reunifying Debra with her mother before the child was ever turned over to the Withams, and such a plan should have been presented at each and every disposition hearing. Cal.Rules of Court 1376(b). Plaintiffs effectively concede that no such plan was prepared until 1981—two years after Debra was removed from her mother and sent out of state. Plaintiffs' Reply Brief at 12. The social studies of the child, her parents and her custodians which were

also required before every disposition hearing, Cal.Welf. & Instit.Code § 280, were hardly adequate since they were prepared by social workers whose own files admit that they had had no contact with the child since her departure from California. Exs. 30b, 31, 32, B–93, B–103.

Perhaps the most egregious error of the Imperial County authorities was the persistent lack of notice to the Withams. The formal notice routinely used in such proceedings was consistently sent to the child's parents, but rarely to the people who had custody of her. Such notice is required both by California, Civ.Code § 5153, and federal law. 28 U.S.C. § 1738A(e).

The response of plaintiffs to this argument is wholly inadequate. They first argue that the PKPA imposes no notice requirement except when there exists an interstate dispute over jurisdiction. A quick reading of the statute dispells this contention. Section 1738A(e) specifically requires that notice and opportunity to be heard be given to those who have custody of the child before any custody determination is made.

Plaintiffs next argue that under California law the Withams were not entitled to notice of the proceedings. For this point they rely on a novel reading of Cal.Civ. Code § 5154(4). That provision states that notice to out-of-state contestants is not required if such persons submit to the jurisdiction of the court. Plaintiffs correctly point out that Vicki Witham submitted to the jurisdiction of the Imperial County Juvenile Court in October of 1979 when she came to California to pick up the infant. It goes without saying, however, that by so submitting in 1979 the Withams merely waived notice for that particular proceeding, and did not waive notice for every one of the dozens of hearings held in the case over the next several years. If plaintiffs' reading of the statute were correct, a litigant would be free to serve an opponent with a pleading and then refuse to notify him of any future proceedings or motions or even the trial. No citation of authority is necessary to conclude that such a scheme would not comport with what is known as due process of law.

Both the state and federal statutes require that the Withams be given notice and a chance to be heard before any custody determination is made. The plaintiffs contend that such notice was in fact provided, but the subsequent discussion in their papers reveals a pattern of alleged telephone contacts and occasional letters about a small minority of the hearings held in Imperial County from 1979–1982. Critically, no notice was given of the March 17, 1982 hearing in which the California court ordered that Debra be returned to Imperial County for placement in a foster home. An informal letter stating that a semi-annual review hearing was scheduled for February 22, 1982, was sent to the Withams, Ex. B–95, even though formal notice—giving the place and time—was sent to the parents. Exs. B–96–99. It appears from the record that either no hearing was conducted on that date, or that at least no decision was rendered and the matter was continued. No notice of such continuance was sent to the Withams, nor any other kind of notice of the March 17 hearing at which their custody of Debra was terminated. The attitude of the Imperial County authorities toward the Withams on this matter is revealed by the court minutes for that March 17 hearing. The court recorded that "all parties were present, except the father and the minors," without any mention of the fact that two people legally entitled to notice under both state and federal law, the couple who had custody, were in fact not present. This sort of sloppiness does not portend decisions which are informed and in the best interests of the child.

THEREFORE, the Court DECLARES that the Circuit Court of Oregon, Marion County Juvenile Department, has jurisdiction over the minor Debra Kay Templeton in accord with 28 U.S.C. § 1738A.

JUDGMENT shall enter accordingly.

SO ORDERED.