Marita ROGERS, Plaintiff,

v.

Alan and Kathy PLATT, Defendants.

Civ. A. No. 86–1516.

United States District Court, District of Columbia.

July 28, 1986.

Stephen A. Fennell, Michael J. Markoff, Steptoe & Johnson, Justine Dunlap, The Legal Aid Society, Washington, D.C., for plaintiff.

Marna S. Tucker, Rita M. Bank, Klores, Feldesman & Tucker, Washington, D.C., for defendants.

## MEMORANDUM OPINION

REVERCOMB, District Judge.

This matter is before the Court on plaintiff's Motion for a Declaratory Judgment and Permanent Injunction. The Court has thoroughly considered the memoranda submitted in support of and in opposition to the motion and heard argument on July 11, 1986.

Plaintiff, Marita Rogers, a California citizen and resident, is the natural mother of a baby boy who was born in a California hospital on June 14, 1985. Prior to the child's birth, plaintiff expressed a desire to give the child up for adoption. Plaintiff's doctor contacted a prospective adoptive couple, defendants Alan and Kathy Platt, who are citizens and residents of the District of Columbia.

The plaintiff left the hospital twelve to fifteen hours after giving birth. Her newborn child remained at the hospital for approximately a day and a half following the

birth, however, the mother never saw the child after birth. Prior to leaving the hospital, plaintiff signed a hospital release form allowing the hospital to release her child to the defendants. Defendants signed the same form and left the hospital with the child one and one half days after birth. Defendants and the child stayed overnight in California at the home of plaintiff's doctor and returned to the District of Columbia the following day, where the child has resided continuously since that time.

Subsequently, plaintiff changed her mind about the adoption and filed an action against the Platts in a California court for the return of her child. Under California law, a parent retains a right to reclaim a child prior to signing a consent to adoption form. Plaintiff has never signed such an authorization.

The day after plaintiff commenced litigation in the Superior Court of California, defendants instituted guardianship proceedings in the Superior Court of the District of Columbia. Each of these Courts has asserted jurisdiction over the matters pursuant to the Parental Kidnapping Prevention Act, 28 U.S.C. Sec. 1738A (PKPA). Under the Act it is possible for only one state to have jurisdiction, and all other states are obliged to give full faith and credit to a determination by a court of that state.[1] The sole issue before this Court is to declare which state court has properly asserted jurisdiction.

■ Preliminary to deciding the issue of which state has jurisdiction under the PKPA, the Court must address defendants' claim that the case is not ripe for disposition. Defendant argues that plaintiff must first exhaust potential state remedies. Defendant suggests that there has yet to be a trial on the merits of custody in either California or the District of Columbia. While this may be correct, it does not preclude federal court intervention at this juncture to determine the narrow issue of jurisdiction under the federal statute. This issue is at present justiciable because the two concurrent assertions of jurisdiction create a violation of the federal Act which is properly challenged before this Court. To conclude otherwise would be to force each party to endure protracted litigation in their respective states which is contrary to the intent and purpose of the Act. Defendant cites no case authority, and the Court has found none, which would support her contention that plaintiff must exhaust state remedies first. Additionally, the Court finds no Congressional intent in the Act's legislative history to support this proposition.

■ Plaintiff argues next that it is premature for this Court to exercise jurisdiction because certain prerequisites to addressing the jurisdictional issue have not arisen. Defendant contends this Court must wait for (1) final conflicting custody determinations, with inherent conflicting assertions of jurisdiction in violation of the PKPA or (2) a determination by the one court that it will not enforce a custody order of the other court.

In an order of the Superior Court of the District of Columbia issued on March 21, 1986, the Court found, *inter alia*, that D.C. was the home state of the child, and that the California Court had asserted jurisdiction inconsistently with the PKPA. There is no dispute that two states are in the process of determining the custody of the child. Thus, there is currently a clear violation of plaintiff's right under the PKPA to have only one state at a time make a custody determination affecting the child. Additionally, there can be no doubt that the Superior Court of the District of Columbia will not enforce even the temporary custody determination made by the Superior Court of California.

There is no justification, in either the PKPA's legislative history or case law involving federal jurisdiction under the PKPA, for this Court to refrain from asserting jurisdiction when there is a clear and present inconsistent assertion of jurisdiction. *Templeton v. Witham,* 595

---

1. The District of Columbia is treated as a "state" under the PKPA. 28 U.S.C. Sec. 1738A(b)(8).

F.Supp. 770 (S.D.Cal.1984), is directly on point. There, a California Court had issued a custody decree, while an Oregon Court, without issuing any such decree, had taken jurisdiction over the custody dispute. *Id.* at 771. The *Templeton* Court concluded that it had jurisdiction under the PKPA to determine whether Oregon or California had power over the child's custody, *id.* at 772, and then held the California decree enforceable.

Moreover, even in cases in which two custody decrees had been granted by courts of different states, federal courts resolving the underlying custody jurisdiction dispute have observed that conflicting decrees are not a prerequisite to federal court action pursuant to the PKPA. For example, in *DiRuggiero v. Rodgers*, 743 F.2d 1009 (3d Cir.1984), the court noted that "the intent of the PKPA is to avoid the multiple exercise of jurisdiction over custody." *Id.* at 1015. Additionally, the court in *Martinez v. Reed*, 623 F.Supp. 1050 (E.D.La.1985), *aff'd mem.* 783 F.2d 1061 (5th Cir.1986), also concluded that "federal question jurisdiction exists to enforce compliance with PKPA where courts of two states asserted jurisdiction over a custody determination." *Id.* at 1052. *See Flood v. Braaten*, 727 F.2d 303, 307, 312 (3rd Cir.1984) (answering in affirmative the question of whether federal court can be employed to correct violation of Sec. 1738A arising when a state court improperly asserts jurisdiction over child custody case.)

■ Defendant's final preliminary argument is that this Court lacks subject matter jurisdiction because there is no express statutory grant of federal court jurisdiction in the PKPA. This issue has been addressed by many courts which have concluded federal courts have federal question jurisdiction under 28 U.S.C. Sec. 1331(a) to resolve inconsistent state court assertions of jurisdiction. *Heartfield v. Heartfield*, 749 F.2d 1138, 1141 (5th Cir.1985); *DiRuggiero*, 743 F.2d 1009; *Flood*, 727 F.2d 303; *Wyman v. Larner* 624 F.Supp. 240, 243 (S.D.Ind.1985); *Martinez*, 623 F.Supp. 1050; *Templeton*, 595 F.Supp. 770.

This issue was most extensively dealt with in *Flood*, 727 F.2d 303. The United States Court of Appeals for the Third Circuit was presented with the question:

[i]f a state court does not comply with the mandates of Sec. 1738A—whether by asserting jurisdiction over a child custody case in violation of Sec. 1738A or by refusing to enforce another state's custody decree in violation of Sec. 1738A—may a federal court ever be employed to correct such a violation of federal law.

727 F.2d at 307. The Court concluded in *Flood, inter alia*, that jurisdiction was based on the presence of a federal question in that the plaintiff sought to enforce compliance with a federal act (PKPA). *Id.* at 307. The Court noted that "[t]he general grant of subject matter jurisdiction, 28 U.S.C. Sec. 1331 (Supp.V.1981), permits federal district courts to hear claims that federal rights have been infringed." *Id.* at 312. Additionally, the Court concluded that federal courts can determine, pursuant to Sec. 1738A, whether a custody decree has been issued by a state with jurisdiction to do so, "without becoming enmeshed in the underlying custody dispute." *Id.* at 310. Thus, federal courts can resolve PKPA jurisdictional disputes without contravening the Congressional intent that federal tribunals not make custody determinations. *Id.*

Finally, in considering whether Congress intended federal courts to have jurisdiction under the PKPA, the *Flood* court concluded that "[a]bsent some tribunal capable of enjoining violations of the strict and uniform requirements of Sec. 1738A, the Congressional policy underlying the enactment would be thwarted." 727 F.2d at 310.

Having considered each of defendants' preliminary jurisdictional arguments in the case at bar, the Court concludes the contentions are without merit. Satisfied that the Court has jurisdiction over the matter, the remaining determination to be made is whether the District of Columbia or California has jurisdiction under the PKPA.

The PKPA, 28 U.S.C. Sec. 1738A(c) provides: A child custody determination

made by a Court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) One of the following conditions is met: (A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons and a contestant continues to live in such State.

The remaining bases for PKPA jurisdiction are applicable only if jurisdiction under subsection (c)(2)(A) does not exist. *Id.*, subsection (c)(2)(B). Both California and D.C. meet the first prerequisite of Sec. 1738A(c), however, it is possible for only one state to be the child's "home State" or have been so within six months. *See Templeton v. Witham*, 595 F.Supp. 770, 772 S.D.Cal.1984); *Bullard v. Bullard*, 3 Hawaii App. 194, 647 P.2d 294, 300 (1982).

Under the first requirement for PKPA jurisdiction, the Court concludes that both the California and the District of Columbia Court have jurisdiction under the law of their respective States. See CAL.CIV. CODE Sec. 5150 (West 1983); D.C.CODE ANN. Sec. 16–4501 (1981). As to the second prerequisite, the child was less than six months old when litigation began over his custody. For a child such as this, the "home State" is "the State in which the child lived from birth with ..." " ... a parent, or a person acting as a parent." 28 U.S.C. Sec. 1738A(b)(4).

■ The relevant facts necessary to making the "home State" determination in the case at bar occurred in the following chronology:

1) The child was born in California.

2) The mother never saw the child following birth.

3) Four to five hours after birth, the mother signed a form allowing the hospital to release the child to the prospective parents. The form stated that the mother could regain custody at any time before a consent to adoption form was executed.

4) The mother stayed in the California hospital for twelve to fifteen hours following birth.

5) The child was released to the prospective parents one and one-half days after birth and stayed with the defendants for approximately one day at the California home of the plaintiff's doctor.

6) The child and prospective parents flew to Washington, D.C. where they have remained since that time.

The intent of the PKPA is to leave no room for courts to balance the percentage of time spent or type of living quarters used in one state versus another state, in deciding which state has home state jurisdiction. In enacting the PKPA Congress intended to " ... avoid jurisdictional competition and conflict between State courts in matters of child custody ..." by " ... establish[ing] national standards under which the courts of such jurisdictions will determine their jurisdiction ..." Parental Kidnapping Prevention Act of 1980, Pub.L. No. 96–611 Sections 7(c)(5) and 7(b), 94 Stat. 3568.

Principles of statutory construction provide further support for refraining from balancing tests in determining jurisdiction under the PKPA. Statutes in derogation of common law must be strictly construed. *See, e.g., Shaw v. North Pennsylvania R.R. Co.*, 101 U.S. (11 Otto) 557, 565, 25 L.Ed. 892 (1879); C. Sands, 3 *Statutes and Statutory Construction* 41–42 (4th ed. 1974). Because the jurisdictional rules of the PKPA may abrogate the common law rule that child custody jurisdiction may be founded on domicile, the language of the statute must be strictly construed.

The Superior Court of the District of Columbia found that the child "has not lived in California 'from birth' ", and in fact

"has never lived in California." *Platt v. Rogers*, 114 W.L.R. 801, 808 (D.C.Sup.Ct. Mar. 21, 1986). This Court cannot reach those same conclusions. If the child had died after those first two days of life, the Court cannot conclude that the child never "lived from birth" in California, albeit a very short time. Similarly, the child could not have "lived from birth" in the District of Columbia. In determining whether the child "lived" in California, it should be irrelevant whether the child was in a hospital or more "traditional" home, given the almost completely dependent nature of an infant. A strict construction of where the child "lived from birth" would be where the child existed or was alive immediately following the time of birth.

The issue then becomes whether the child ever lived from birth in California with "*a parent or a person acting as a parent.*" 28 U.S.C. Sec. 1738A(b)(4). Since one pre-requisite is that a contestant must live in a state to create "home State" status, the natural mother is the only person the child could have "lived with" in California under "home State" analysis. To determine if the child "lived with" the mother, the Court must again follow the strict construction requirement coupled with the well established doctrine of giving the plain meaning to language of a state. The Court concludes that to "live with" someone requires a deliberate manifestation to share a common place with the person during a substantial period of the time involved. Since an infant cannot make such a manifestation, the Court must look to the mother in this situation. It is irrelevant whether this occurred in a hospital, house, or even a park or alley. It is also immaterial whether the two were physically present together. If the mother and child were isolated from each other for medical reasons, the focus of the Court would be the same.

Notwithstanding the conclusion above that the child lived in California, the Court has difficulty concluding that the infant "*lived with*" the mother from birth. The mother never expressed the desire to live with the child during its first days after birth, and in fact acted completely contrary to such a desire. The mother expressed her desire to give up her child before the child was born. *See* Affidavit of Marita Rogers ("MR"), at p. 1. They were in the hospital simultaneously only as a matter of circumstance. The mother refused to see the child after birth and signed what she believed was an Infant Release Authorization four to five hours after birth. She then left the hospital within twelve to fifteen hours after birth. MR at p. 2. The mother didn't decide she wanted to live with her child until after the time the child was in the District of Columbia.

There are cases with similar facts which would support finding that either California or the District of Columbia could be the "home State." *See Martinez*, 623 F.Supp. 1050; *In re Adoption of C.L.W.*, 467 So.2d 1106, 1110 (Fla.App.1985). However, the *Martinez* court did not explain the reasoning behind its conclusion, and this Court does not agree with the *C.L.W.* court's conclusion that a child can "live from birth" in a state in which the child wasn't present in during its first three days of life. Defendants argue that a strict construction of "lived from birth" is not warranted because modern medicine contemplates the possibility of a mother giving birth in a hospital of a neighboring jurisdiction. The Court concludes that the facts of this case do not warrant such a special exception to principles of strict statutory construction.

■ If "home State" analysis was the only basis for determining jurisdiction under the PKPA, the Court would have to conclude the "home State" was California because that is where the child "lived from birth." Fortunately, Congress foresaw there would be situations when it would be unclear if there was a "home State" under the strict guidelines of determining PKPA jurisdiction, and provided alternative bases for the states to follow. By prioritizing the bases upon which states could exercise jurisdiction, the PKPA allows only one state at a time to assert jurisdiction. *Flood*, 727 F.2d at 312. In doing so, the Act leaves

little or no room for the exercise of judicial discretion in determining which of two states can exercise jurisdiction. *See Martinez v. Reed*, 623 F.Supp. at 1057; *Ex Parte Lee*, 445 So.2d 287, 290 (Ala.Civ.App. 1983); *Mitchell v. Mitchell*, 437 So.2d 122, 126 (Ala.Civ.App.1982); *Arbogast v. Arbogast*, 327 S.E.2d 675, 679 (W.Va.1984).

Because the child did not "live from birth with" the plaintiff or defendants, the Court concludes no state is the "home State" for determining PKPA jurisdiction. The Court must therefore look to the next prioritized subsection of the Act, whereby a State may assert jurisdiction if:

> it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

28 U.S.C. Sec. 1738A(c)(2)(B)(ii).

It must be re-emphasized that federal courts have very limited jurisdiction under the PKPA. The role of the Court is to ensure that state jurisdiction determinations are made consistent with the Act, "without becoming enmeshed in the underlying custody dispute." *Flood*, 727 F.2d at 310. As directed by our Court of Appeals, a determination of the "interests of the [child]" would "... seriously compromise the principles underlying the domestic relations exception" to diversity jurisdiction. *Bennett v. Bennett*, 682 F.2d 1039, 1041–1043 (D.C.Cir.1982). The Court must therefore determine which state satisfies the requirements of jurisdiction, without balancing the degree to which each state is able to make the ultimate custody determination. The Court must also look to the purpose of the PKPA in applying the Act.

Applying these guidelines to the factors provided in subsection (c)(2)(B)(ii) of the PKPA, the Court concludes that there exists substantial evidence in either California or the District of Columbia "concerning the child's present or future care, protection, training, and personal relationships." The child's natural mother resides in California where she has raised the child's five-year-old brain damaged sister. This home environment will provide substantial evidence as to what the child can be provided in the future. The child's prospective adoptive parents reside in the District of Columbia where there is also substantial evidence of the child's present or future care. Additionally, each party can appear in the foreign state to provide further information.

The Court concludes that the child and each contestant have a significant connection to both California and the District of Columbia, however, the connection is much more significant to California in examining the purposes of the PKPA. The connection to the District of Columbia is that the child has been raised there during the first year of his life and is present there now. It must be noted however, that under the PKPA as well as the law of California and the District of Columbia, physical presence of the child alone is not sufficient or necessary to evoke custody jurisdiction. 28 U.S.C. Sec. 1738A(c)(2)(B)(ii)(I); D.C.CODE ANN. Sec. 16–4503(b) and (c) (1981); CAL. CIV.CODE Sec. 5152(2) and (3) (West 1983).

The significant connection to California is that the child's natural mother lives in California, the mother began litigation over the child in California first, and the child was born in California.

The mother's permanent residence in California is important because the natural mother is given a strong presumption in the law. The *Martinez* Court, addressing facts very similar to the case at bar, held that the natural mother's state had jurisdiction under the PKPA (although that Court reached the conclusion under a different subsection of the Act). On a Motion for Reconsideration the *Martinez* court noted a Supreme Court of Alabama holding that the "child's best interests, *as a matter of law*, lies with its mother ..." 623 F.Supp. at 1057, citing *Davis v. Turner*, 337 So.2d 362 (Ala.1976).

The natural mother's presence and permanent residence in California is also significant in light of her instituting litigation over her child's custody there, before defendants commenced proceedings in the District of Columbia. In *St. Andrie v. St. Andrie,* 473 So.2d 140 (La.App.3d Cir.1985), the Court found the child to have no "home State" and to have "significant connections" to both states in issue.[2] The Court held that the state in which a custody determination was filed first should therefore have jurisdiction. *Id.* at 144.

The most important factor compelling the conclusion that California has jurisdiction is the fact that the child was born in California and is absent from that state because of his removal by defendants—although removed initially with consent which has since been revoked. The primary purpose of the PKPA is to prevent the taking of children out of state for the purpose of obtaining custody awards. *Peterson v. Peterson,* 464 A.2d 202 (Me.1983); *Belosky v. Belosky,* 97 N.M. 365, 640 P.2d 471 (1982); Pub.L. 96–611 Sec. 7(c)(6). While a major need for the Act was to discourage abductions by one natural parent, no wrongdoing or kidnapping is necessary for the Act's provisions to be operable. *See Debra S. v. Roger S.,* 116 Misc.2d 264, 455 N.Y.S.2d 723 (1982).

The Hospital Release Authorization, which both plaintiff and defendants signed, contained the statement required by California law that the parent retains all responsibility for the child's custody and control until the court issues the adoption decree. The form also stated that the parent has the right to reclaim the child at any time prior to signing the consent to the adoption. *See* CAL.CIV.CODE Sec. 211. II. (West 1983). As acknowledged by the court in California, the document signed by the parties, containing the rights of the parent under California law," contemplates adoption in California." *In the Matter of the Application of Marita L. Rogers,* Case No. 816385/816913, Reporter's transcript, April 30, 1986, p. 20.

Another major goal of the Act is to provide protection for the "left-behind" parent. This is clear from the language of the "home State" provision which favors the parent left behind when a child is taken to a foreign jurisdiction. Provided the other prerequisites are met, the child's original state has jurisdiction so long as the left-behind parent remains in the state and files an action within six months. *See* 28 U.S.C. Sec. 1738A(c)(2)(A)(ii). This is confirmed by the remarks on the Senate floor on August 25, 1980, of Senator Wallop, the original and primary sponsor of the PKPA, emphasizing the protections which are provided the left-behind natural parent. 126 Cong.Rec. 22, 807 (1980).

A third major purpose behind the PKPA also supports concluding that the original state of the child and natural parent has jurisdiction under the Act. Congress intended to dissuade parties from removing a child from one state to another and thereby taking advantage of more favorable substantive law in the second jurisdiction.[3] The case at bar illustrates this problem because adoption law in the District of Columbia is much more favorable to would-be adoptive parents than is the law of California.[4] The Court in no way imputes

---

**2.** The Court was determining child custody jurisdiction under the Uniform Child Custody Jurisdiction Act which has been adopted by a majority of the states and is identical to the PKPA in pertinent part.

**3.** See 126 Cong.Rec. 22, 803 (1980) (statement by Senator Wallop that some court-shopping parents flee to another state seeking more favorable decree); Reform of the Federal Criminal Laws, Hearing before the Senate Judiciary Committee on S. 1722 and S. 1723, 96th Cong., 1st Sess. at 10670 (difference between state laws tempt parents to forum shop for jurisdiction

with favorable substantive law). *See also Tufares v. Wright,* 98 N.M. 8, 644 P.2d 522 (1982); *Belosky v. Belosky,* 97 N.M. 365, 640 P.2d 471 (1982).

**4.** *Compare* D.C.CODE ANN. Sec. 16–304(e) (1981) (broadly allowing adoption without natural parent's consent even absent showing of parental unfitness) *with* CAL.CIV.CODE Sections 224, 226b, 232 (West 1983) (narrowly circumscribing situations in which adoptions can occur without parental consent).

any intent on the defendants to "forum shop", however, the facts in this case nonetheless would encourage such activity, in contravention of Congressional intent, if the significant connection to the child and natural mother's original state is not given priority jurisdiction.

The Court concludes that if "home State" analysis was applied, California would have jurisdiction over the child in the case at bar under the PKPA. The Court concludes that the facts of this case require a "significant connection/substantial evidence" analysis, however, and the child has a more significant connection to the State of California.

Accordingly, the Court ORDERS, ADJUDGES, and DECLARES that the State of California has jurisdiction under the Parental Kidnapping Prevention Act to make all custody determinations in this matter. The Court directs the parties to pursue their remedies in the courts of the State of California.