**LOUISIANA GAS SERVICE COM-PANY, Petitioner,**

v.

**FEDERAL POWER COMMISSION, Respondent.**

**No. 71-2879.**

United States Court of Appeals, Fifth Circuit.

June 28, 1973.

Charles King Mallory, Washington, D. C., Andrew P. Carter, New Orleans, La., for Louisiana Gas Service Co.

Leon M. Payne, Houston, Tex., for United Gas, Inc.

William R. Choate, Perry O. Barber, Jr., Jeron Stevens, Houston, Tex., for United Gas Pipeline Co.

Thomas M. Knebal, Washington, D. C., for Willmut Gas and Oil Co.

Howard E. Wahrenbrock, Washington, D. C., John M. Kuykendall, Jr., Jackson, Miss., for Miss. Valley Gas Co., Mobile Gas Service Corp., and Clarke-Mobile Counties Gas Dist.

Jon C. Lotis, Counsel, Gordon Gooch, Gen. Counsel, J. Richard Tiano, First Asst. Sol., Leo E. Forquer, Sol., George W. McHenry, Atty., Federal Power Commission, Washington, D. C., for Federal Power Commission.

Before JOHN R. BROWN, Chief Judge, and BELL and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This is another in the long series of Federal Power Commission opinions and orders concerning certain of United Gas Pipe Line Company's facilities in southern Louisiana which have been challenged in this court. Basically, this case involves the question of who has the right to regulate a pipeline during the period in which the FPC is exercising its primary jurisdiction to determine whether or not the facilities are subject to federal regulation. Other aspects of this jurisdictional dispute are treated in separate opinions issued this date by this court.[1]

*Factual Background*

On October 1, 1970, United Gas Pipe Line Company filed with the FPC an application for a certificate of public convenience and necessity with regard to certain sales in Louisiana and Texas, pursuant to section 7(c) of the Natural Gas Act, 15 U.S.C. § 717f(c). The facilities involved in this case had formerly been treated as wholly intrastate and had been regulated by the Louisiana Public Service Commission. The alleged existence of federal jurisdiction was based on the doctrine of transportation of commingled intrastate and interstate

---

1. See Louisiana Power & Light Co. v. F.P.C., 5 Cir., 483 F.2d 623; State of Louisiana, et al v. F.P.C., No. 72-2233, 5 Cir., 483 F.2d 972.

934

volumes of gas which had its genesis in the *Florida Parishes* opinion.[2]

To keep straight exactly what this petitioner is challenging here it is necessary to set forth the chronology of various proceedings before the FPC in some detail. In FPC Docket No. C.P. 71–89, United filed the existing rate schedules under which sales in these facilities had been regulated by the Louisiana Public Service Commission. Prior to FPC determination of its jurisdiction over these disputed facilities and while the certificate proceeding was pending, United filed a general schedule of proposed changes in its FPC Gas Tariff pursuant to section 4(d) of the Natural Gas Act. This filing included increased rates for the disputed facilities. On December 31, 1970, the FPC accepted for filing these proposed rate increases in Docket No. R.P. 71–41, but suspended their effectiveness for five months under section 4(e) of the Act. With regard to the disputed facilities and sales which had not yet been certificated, the Commission expressly ordered that the increased rates in this southern zone were to be contingent on the finding of jurisdiction and issuance of a certificate in Docket No. CP 71–89. If there was no finding of jurisdiction or no certification, United would be required to make refunds of all excess charges with interest.

The suspension of these proposed tariffs under section 4(e) meant that the new charges could not become effective until June 1, 1971. During this period, the FPC scheduled hearings on this general rate increase. On March 10, 1971, United filed a revision of its earlier tariff filing and requested that this amended tariff become effective on June 1, 1971, the date on which the original increased rates would have become

effective.[3] The FPC acquiesced and waived the 60-day requirement of its regulations, section 154.22, in an order dated May 18, 1971.

The next day, Louisiana Gas filed a motion to strike all proposed rate increases and to dismiss the proceedings relating to the rates and conditions of service for non-certificated sales to Louisiana Gas. As noted, these noncertificated sales were currently being considered in certification proceedings in Docket No. CP 71–89. In the alternative, Louisiana Gas requested suspension of the rates pending certification.

By order dated July 8, 1971, the FPC denied these motions of Louisiana Gas. The Commission again made clear that it was allowing the rates to go into effect only because it noted probable jurisdiction under *Florida Parishes*, and provided for refunds if a certificate was not ultimately issued. On August 27, the Commission denied rehearing, stating that rate jurisdiction was not contingent upon certificate authority and that the only jurisdictional requirement was that the sale to Louisiana Gas be a sale in interstate commerce for resale for public consumption.

Thus, the question before us on review is whether or not the FPC was proper to order imposition of contingent rates before it had conclusively determined its jurisdiction over the facilities and before a certificate had been issued.[4]

### Right to Regulate

The FPC takes the position that there has been federal jurisdiction over these facilities ever since the jurisdictional facts, i. e., the injection of interstate volumes of natural gas into these form-

2. United Gas Pipe Line Company, 30 FPC 560 (1963), affirmed sub nom. Louisiana Public Service Commission v. F.P.C., 5 Cir., 359 F.2d 525, cert. den. 385 U.S. 833, 87 S.Ct. 73, 17 L.Ed.2d 68 (1966).

3. This version generally involved schedules pertaining to curtailment rather than adjusted rates.

4. In State of Louisiana, et al v. F.P.C., No. 72–2233, 5 Cir., 483 F.2d 972, we addressed the propriety of a similar rate increase allowed by the Commission in light of a supplemental rate increase filed by United. This petitioner, Louisiana Gas Service Corp., is only challenging the first general rate increase in this particular case.

erly intrastate facilities, were first present. It argues that the probable jurisdictional prerequisites allow it to regulate a pipeline, subject to refund, while determining the actual existence of federal jurisdiction and the necessity for a certificate.

In J. M. Huber Corp. v. F.P.C., 3 Cir. 1956, 236 F.2d 550, 555, the court found that jurisdiction did not depend on an agency or court determination thereof:

> The jurisdiction of the Commission over a natural gas company conferred by Section 4(b) of the Act does not depend on whether that company fulfills its obligation under 7(c) to obtain a certificate. There is nothing in 7(c) or any other part of the Act giving the slightest credence to that strange conception of the Commission's authority. . . As it now develops, jurisdiction by the Commission over independent producers was present in the Act throughout the period but it was not until the Supreme Court defined it in 1954 that the Commission considered itself justified in asserting that authority. There is no indication that its attitude prior to the Phillips decision was arbitrary or capricious and beyond doubt thereafter it functioned in accordance with the Supreme Court mandate.

Thus, because the FPC may have been hesitant in asserting jurisdiction until its theory had received Court approval is no reason to say that the jurisdiction has not always been present.

Here, the Commission had a colorable claim to jurisdiction under the *Florida Parishes* decision. It had requested that United take steps in light of *Florida Parishes* to get a determination of the need for a certificate. While *Florida Parishes* was not as clear an authority for the existence of federal jurisdiction [5] as was the Supreme Court opinion which controlled *Huber,* the general principle should remain the same. When the FPC has a colorable claim to jurisdiction, it should be able to take regulatory control, subject to a viable refund procedure, pending final determination of jurisdiction.[6]

Under section 16 of the Natural Gas Act, the Commission has "power to perform any and all acts, and to prescribe, issue, make, amend, and rescind such orders, rules, and regulations as it may find necessary or appropriate to carry out the provisions of this Act." This section would also support the Commission's assertion of jurisdiction once it has noted probable jurisdiction. As the Commission pointed out with regard to these facilities in question, United cannot charge the increased rates without a filing before the Commission. Thus, the Commission notes the difficulties for United if jurisdiction is ultimately withheld unless some action is taken to protect United during the period that this jurisdictional determination is being made. Plaquemines Oil and Gas Co., 43 FPC 242 (1970), affirmed in part and remanded in part, Plaquemines Oil and Gas Co. v. F.P.C., 1971, 146 U.S.App.D. C. 287, 450 F.2d 1334, illustrates the difficulty in trying to reconstruct a rate schedule which should have applied to periods during which the FPC should have been exercising control but was not. In that case the court held that the Commission possessed the equitable power to go back and reconstruct sales and determine whether refunds were in

---

5. We do today affirm the Commission's jurisdiction over these facilities under the *Florida Parishes* doctrine. See Louisiana Power & Light Co. v. F.P.C., supra n. 1.

6. With regard to possible ways to return the parties to status quo if the FPC ultimately finds the jurisdictional facts do not exist, there is little trouble where the issues involve only the rates to be charged the customers. Money can always be re-

funded with interest. The situation is far different, however, where the possibility of curtailment of services is involved. Under those circumstances the axiom that "you can't refund gas" is clearly applicable. Therefore, we do not pass on the issue of whether or not the Commission may order curtailment before it has determined for itself the existence of jurisdictional facts.

order.[7] The court, however, pointed out the great difficulty in doing this:

. . . we recognize that instances may arise where attempts by the Commission to determine what it would have done in previous years, had filings been made in compliance with the Act, may be unavailing because of lack of absolutely essential data or may be so burdensome on the Commission (and hence the public purse) or the parties as to be prohibitive. *Id.* at 1338, n. 13.

Here, as the Commission points out in its brief, these rate filings by United supply the missing data and if the Commission is allowed to go on and pass on these rate filings subject to refunds, all parties are adequately protected. Furthermore, it seems well within the Commission's discretion to decide that any excess should be paid into United, subject to refund with interest, rather than held by the purchasers to be paid with interest to United if jurisdiction was found. The Commission has far more control over a natural gas company like United to ensure that the refund money would be actually available if ever due.

We also find that there is ample judicial authority for the position that the Commission may exert control prior to the issuance of a certificate of public convenience and necessity with regard to the sales involved. In addition to the *Huber* case above, see Sun Oil Co. v. F. P.C., 5 Cir. 1960, 281 F.2d 275, in which we stated:

The power of the Commission over [a company] and its sales and deliveries of gas is not dependent upon it having made application for and the Commission having issued a Certificate of Public Convenience and Necessity. *Id.* at 278.

See also Magnolia Petroleum Co. v. F.P. C., 5 Cir. 1959, 236 F.2d 785; Natural Gas Pipeline Co. v. Harrington, 5 Cir. 1957, 246 F.2d 915.

We find that all of the other contentions of petitioner, Louisiana Gas Service Corp., are without merit and, therefore, the exertion of control by the FPC in this case prior to a final adjudication by the FPC, but subject to refund, is

Affirmed.

where a formerly intrastate pipeline has allegedly become interstate in nature.

---

7. Were the FPC not allowed to take interim control of rate regulation, this problem would be present in every case