[No. C000620. Third Dist. Mar. 29, 1988.]

MARITA BELLE ROGERS, Plaintiff and Respondent, v. ALAN PLATT et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of part I.

COUNSEL

Farella, Braun & Martel and Roger B. Pool for Defendants and Appellants.

Glendalee Scully for Plaintiff and Respondent.

OPINION

SPARKS, Acting P. J.—This case involves a dispute between a California mother and a Washington, D.C., couple over the custody of a three-year-old child. The mother, plaintiff Marita Rogers, seeks to litigate the question in the Superior Court for Sacramento County, California. The couple, defendants Alan and Kathy Platt, unsuccessfully moved that court to quash service of summons on them on the ground that California lacked subject matter jurisdiction over the child. The issue on appeal is whether California is the appropriate forum to resolve the child custody dispute under the federal Parental Kidnapping Prevention Act of 1980 (PKPA or the act). (28 U.S.C. § 1738A). The trial court determined that it was and awarded temporary custody to plaintiff. Defendants appeal from the orders denying their motion to quash and awarding custody to plaintiff. On appeal they renew their contention that California lacks subject matter jurisdiction under the PKPA. We hold that California is the proper forum under that act and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The important facts are not complicated. Defendants are, by their own description, an affluent married couple who live and work in the District of Columbia. They had been informed they would be unable to have children and were interested in adoption. To this end they spoke with Dr. Bruce Bob, a Sacramento obstetrician, who had known Alan Platt since childhood. The defendants urged him to consider them for a private adoption should an opportunity arise.

In 1985 plaintiff was expecting the birth of a child and was attended by Dr. Bob. She spoke to him about the possibility of placing the child for adoption. Dr. Bob in turn informed defendants that plaintiff wished to place her expected child up for adoption and defendants expressed their interest.

The subject of this dispute, known to plaintiff as Baby Boy Rogers and to defendants as Roger Platt, was born on June 14, 1985. Dr. Bob spoke with defendants by telephone and advised them to come to California.

Defendants arrived in Sacramento on June 15, 1985. They went to the Sutter Memorial hospital where they and plaintiff executed a release form permitting the hospital to give them temporary custody of the baby. The baby was released to defendants and after spending the night at the home of Dr. Bob in Sacramento they returned to Washington, D.C., with the child on June 16, 1985. Thus, the child spent the first two days of his life in Sacramento.

The release form executed by plaintiff and the defendants is critical because it provides the only basis upon which defendants could obtain even temporary custody of the child. The form is entitled "Health Facility Release Report of Minor to Other Than Parent or Legal Guardian." It was prepared by the Department of Social Services pursuant to Civil Code section 226.11. This statute provides: "All forms adopted by the State Department of Social Services authorizing the release of an infant from a health facility to the custody of persons other than the person entitled to the custody of the child pursuant to Section 197 or Section 200 and authorizing such other persons to obtain medical care for the infant shall contain a statement in boldface type delineating the various types of adoptions available, and the natural parents' rights with regard thereto, including, but not limited to, rights with regard to revocation of consent to adoption."

In accordance with Civil Code section 226.11, the form used in this case contains a box at the top of the page which states, in boldface print: "Important notice [¶] This health facility release form is not a relinquishment or consent for adoption. In California there are two basic ways a child may be placed for adoption if the parent feels that such a placement is in the best interest of the child: [¶] (1) The parent may place the child directly with adoptive parents. The law requires that you know with whom you are placing your child. The parent retains all responsibility for the child's custody and control until the court issues the adoption decree. The parent has the right to reclaim the child at any time prior to signing the consent to the adoption. Once the consent to the adoption by the petitioners is signed by the birth parent(s) in the presence of a representative of the Department of Social Services or a licensed adoption agency it may be withdrawn only with court approval. [¶] (2) The parent may relinquish the child to a licensed adoption agency for placement in a home approved by the agency. Once the child is relinquished to a licensed adoption agency, the relinquishment may not be rescinded except by mutual agreement."

The parent's authorization executed by plaintiff provides: "I, Marita Rogers, the parent of Baby Boy Rogers authorize Sutter Memorial (202) 244-6650 Hospital to release my child to Alan and Kathy Platt residing at [address deleted]. In releasing my child from hospital for the purpose of

adoption planning, I retain all parental rights to his/her custody and control. This only authorizes release of my child from the hospital. The adoption petition should be filed within 30 days or the Department will make an investigation." The acknowledgment executed by Alan Platt provides: "I/we have on this date _____ received Baby Boy Rogers for the purpose of adoption planning. I/we understand that this only authorizes release of this child from the hospital. This is not a consent or relinquishment of this child for adoption." By executing this form the defendants were able to obtain possession of the infant.

Within a few days of leaving the hospital plaintiff changed her mind about adoption. She placed a telephone call to the defendants and eventually spoke with a person who identified himself as Mr. Platt. He refused to return the child.[1] Plaintiff made other efforts to have her baby returned, including talking to Dr. Bob and to Timothy L. Zeff, an attorney who had advised the parties earlier, and by contacting various state agencies. Eventually plaintiff was referred to the community legal service organization which now represents her.

On November 21, 1985, plaintiff's attorney requested the Sacramento County Superior Court to issue a writ of habeas corpus for the return of the child. The court conditioned the issuance of the writ upon notification to the defendants and other interested parties. Plaintiff's attorney provided notice by telephone to the defendants, Attorney Zeff, Dr. Bob, and defendants' Washington, D.C., counsel. Thereafter the writ was issued, but numerous attempts to serve process upon defendants failed. The process server was informed that defendants had left their residence for a vacation. Dr. Bob indicated that they were avoiding the service of process.

Following the issuance of the writ of habeas corpus there ensued a race to the courthouse. On December 10, 1985, defendants filed a petition for child custody determination in the Superior Court of the District of Columbia. They subsequently filed a petition for adoption in that court. On December

---

[1] In a declaration Alan Platt states that the first contact with plaintiff was on July 19, 1985, and that she only said she was thinking about changing her mind. A few days later a Sacramento attorney called the Platts to obtain information about the case, but he apparently did not take the case. Eventually, in November, defendants were contacted by a representative of the McGeorge School of Law Community Legal Services, an agency which now represents plaintiff. Alan Platt alleges that this was the first time they knew plaintiff had changed her mind about the adoption. However, Mr. Platt concedes that in a June 18, 1985, telephone conversation Dr. Bob told them that plaintiff was having second thoughts. Mr. Platt then called Tracy Gross, who had handled the release of the child from the hospital, and was told that plaintiff was changing her mind and had been referred to the Department of Social Services, private counsel, and legal aid. Thus, it is clear that within days of the child's birth defendants were aware that plaintiff was at least having second thoughts about adoption.

13, 1985, plaintiff filed, in California, a complaint to establish parental relationship and a request for child custody.

On December 24, 1985, plaintiff filed a motion in the Family Division of the Superior Court of the District of Columbia to dismiss defendants' petition for custody of the child. The District of Columbia trial court denied the motion reasoning that the District of Columbia was the appropriate forum to hear the case under the PKPA. Noting that defendants had initiated separate adoption proceedings there claiming custody pursuant to the statutory ground that consent by the mother is being "withheld contrary to the best interest of the child" (D.C. Code, § 16-304, subd. (e)), the court inferentially found that defendants were persons acting as parents of the child. That court further concluded that the child had not lived in California "from birth" and consequently California was not its "home state." Instead, because the child had resided in Washington, D.C., with defendants since being released from the hospital, the court reasoned that the District of Columbia was the home state and it had jurisdiction consistent with the PKPA and the Uniform Child Custody Jurisdiction Act.

Plaintiff then sought a declaratory judgment and permanent injunction from the United States District Court for the District of Columbia. The district court agreed with plaintiff that California is the appropriate jurisdiction to resolve this dispute. (*Rogers* v. *Platt* (D.D.C. 1986) 641 F.Supp. 381.) It found that the child had not lived from birth in either California or the District of Columbia. "Because the child did not 'live from birth with' the plaintiff or defendants, the Court concludes no state is the 'home State' for determining PKPA jurisdiction." (*Id.,* at p. 387.) Since there was no home state, the court turned to the next subsection of the PKPA and found that it was in the best interests of the child that California assume jurisdiction. (28 U.S.C. § 1738A(c)(2)(B).) Consequently, the federal court decreed that California has jurisdiction under the PKPA to make all custody determinations in this matter, and directed the parties to pursue their remedies in the courts of this state. (*Id.,* at p. 389.) Defendants inform us that they have appealed this ruling and that it has been stayed pending resolution of this appeal.

Meantime, back in California, defendants moved to quash the service of process for lack of jurisdiction of the matter in California. The trial court denied the motion to quash the service of process, affirmed that California has jurisdiction in this matter, and awarded temporary custody of the child to plaintiff. This appeal followed.

■■■■■■■■■■■■■■■■■■■■■■

DISCUSSION

I*

PRELIMINARY CONTENTIONS

. . . . . . . . . . . . . . . . . . . .

II

PARENTAL KIDNAPPING PREVENTION ACT OF 1980

Both California and the District of Columbia have enacted the Uniform Child Custody Jurisdiction Act (UCCJA). (Civ. Code, § 5150 et seq.; D.C. Code, § 16-4501 et seq.) The UCCJA was intended, among other things, to "avoid jurisdictional competition and conflict with courts of other states in matters of child custody," to "discourage continuing controversies over . . . custody," and to "deter abduction and other unilateral removals of children undertaken to obtain custody awards." (9 West's U. Laws Ann. (1979) § 1, subds. (a)(1), (a)(4), and (a)(5) pp. 116-117; Civ. Code, § 5150, subds. (1)(a), (1)(d), and (1)(e); D.C. Code, § 16-4501, subds. (a)(1), (a)(4) and (a)(5).) In furtherance of these purposes, the UCCJA "limits custody jurisdiction to the state where the child has his home or where there are other strong contacts with the child and his family. . . . It provides for the recognition and enforcement of out-of-state custody decrees in many instances. . . . Jurisdiction to modify decrees of other states is limited by giving a jurisdictional preference to the prior court under certain conditions. Access to a court may be denied to petitioners who have engaged in child snatching or similar practices." (Commissioners' Prefatory Note to Uniform Child Custody Jurisdiction Act, 9 West's U. Laws Ann., *supra*, pp. 111, 114.)

In 1980, Congress enacted the PKPA a copy of which is attached to this opinion as an appendix. (28 U.S.C. § 1738A.) Although the PKPA closely parallels the UCCJA it is not identical.[2] The PKPA requires that every state enforce and abide by its terms (28 U.S.C. § 1738A(a)) and thus "preempts

---

* See footnote *ante,* page 1204.

[2] It has been noted that the "primary distinction between the UCCJA and the PKPA is that the UCCJA establishes fewer mandatory preferences among the jurisdictional grounds that it recognizes, than does the PKPA." (2 Markey, Cal. Family Law Prac. & Proc., § 22.10[2][a], p. 22-14.) The significant differences between the two acts are outlined in California Family Law Service (1986) Determination of Custody Rights, section 46:26, pages 36-37.)

state law on the issue of jurisdiction by a state to render a valid custody decree." (*People* v. *Superior Court (Smolin)* (1986) 41 Cal.3d 758, 770 [225 Cal.Rptr. 438, 716 P.2d 991].) For purposes of the PKPA, the District of Columbia is considered a state. (28 U.S.C. § 1738A(b)(8).) ██ The issue here is whether pursuant to the PKPA jurisdiction over this custody dispute is vested in the California courts or the District of Columbia courts. For a virtual host of reasons we conclude that California is the appropriate forum in this matter.

As the United States Supreme Court recently recounted, the PKPA "imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act. In order for a state court's custody decree to be consistent with the provisions of the Act, the State must have jurisdiction under its own local law and one of the five conditions set out in § 1738A(c)(2) must be met. Briefly put, these conditions authorize the state court to enter a custody decree if the child's home is or recently has been in the State, if the child has no home State and it would be in the child's best interest for the State to assume jurisdiction, or if the child is present in the State and has been abandoned or abused. Once a State exercises jurisdiction consistently with the provisions of the Act, no other State may exercise concurrent jurisdiction over the custody dispute, § 1738A(g), even if it would have been empowered to take jurisdiction in the first instance, and all States must accord full faith and credit to the first State's ensuing custody decree." (*Thompson* v. *Thompson* (1988) 484 U.S. 174, 175-177 [98 L.Ed.2d 512, 518-519, 108 S.Ct. 513; fns. omitted.)

As the high court noted, there are two prerequisites for jurisdiction under the PKPA: the state must first have jurisdiction under its own laws and it must next meet at least one of the five statutory conditions enumerated in subdivision (c)(2). One of those conditions relates to being what is called the "home State" of the child. (28 U.S.C. § 1738A(c)(2)(A).) The phrase "home State," as used in the Act, "means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any such persons are counted as part of the six-month or other period." (28 U.S.C. (b)(4); see also *People* v. *Superior Court (Smolin), supra,* 41 Cal.3d at p. 770.)

Naturally, defendants claim that the "home State" of the child is the District of Columbia. This is so, they argue, because the child has "lived from birth" there and they both can properly be classified as "a person

acting as parent" since each "claims a right to custody." (28 U.S.C. § 1738A, subd. (b)(4), (6).) Since the child is not their biological offspring, defendants obviously do not qualify as its parents. They assert instead that they met the statutory definition of a "person acting as a parent." A person acting as a parent is "a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody." (28 U.S.C. § 1738A(b)(6).) Defendants have physical custody of the child and although they have not been awarded custody by a court, they do "claim" a right to its custody.

Plaintiff responds by arguing that, aside from physical custody, defendants do not possess any legal grounds to support their bare claim to a right to custody. In the words of her counsel, defendants "possess nothing else that would bestow such a claim of right: not consanguinity, not a court award, not the status of foster or step-parents, and certainly not consent from the mother." As she sees it, a bald claim to custody, without any legal basis, cannot meet the statutory requirement of a person acting as a parent.

In our view, plaintiff has the better argument. Defendants do not qualify as persons "acting as parents" because prior to the commencement of the litigation they did not have even a colorable claim to a right to custody. Although the statute does not explain what was intended to be encompassed within the phrase "claims a right to custody," we are satisfied that the claim must at least be a colorable one. ■ By a colorable claim, we mean a claim that is advanced in good faith on some plausible legal theory.[3] The possession of a colorable claim in order to meet jurisdictional requirements has been widely employed in other contexts. (See e.g., *Koerpel* v. *Heckler* (10th Cir. 1986) 797 F.2d 858, 861-866; *Louisiana Gas Service Co.* v. *Federal Power Com'n* (5th Cir. 1973) 480 F.2d 933, 935.) ■ In order to remain consistent with its underlying purposes, the PKPA must be construed to require that a person have some legally recognized basis for claiming custody in order to qualify as a person acting as a parent because otherwise one of the primary purposes of the Act would be thwarted. Congress specifically declared that a purpose of the Act was to "deter interstate abductions and other unilateral removals of children undertaken

---

[3] Occasionally, a colorable claim has been used in a different sense as a claim not urged in good faith but asserted only for the purpose of conferring jurisdiction. Thus, for example, in determining the jurisdictional amount in a diversity of citizenship suit on a motion to dismiss, the test is one of good faith and legal certainty. A mere "colorable" claim tendered for the purpose of investing jurisdiction, it has been held, is insufficient. (*St. Paul Indemnity Co.* v. *Cab Co.* (1938) 303 U.S. 283, 288-289 [82 L.Ed. 845, 848-849, 58 S.Ct. 586.) We use the phrase in a sense not dissimilar from the standard employed in a malicious prosecution action. To be colorable, a claim must be asserted in good faith and must be legally tenable under the theory advanced. (See *Williams* v. *Coombs* (1986) 179 Cal.App.3d 626, 639 [224 Cal.Rptr. 865].)

to obtain custody and visitation awards." (Pub. L. No. 96-611, § 7, subd. (c)(6).) If a person could claim a right to custody simply by asserting a desire for custody, then even an outright kidnapper could qualify as a person acting as a parent under the Act and the statutory purpose would be defeated.

A colorable claim to the right to custody can arise in many ways. It may arise by virtue of a natural relationship with the child, such as the parental relationship or other close familial relationships which give rise to a right to custody pursuant to law. It may arise where, pursuant to law, a parent has relinquished the right to custody to the claimant. In the absence of such circumstances a right to claim custody can only arise through state intervention. A state agency with jurisdiction may confer the right to custody upon a person. And a court may enter an order granting custody. In the absence of one of these facts there is simply no provision in law by which an unrelated person may unilaterally take custody of a child in derogation of the right to custody of the child's natural parent.

In the circumstances of this case it is clear that prior to the commencement of litigation the defendants at no time had a colorable right to custody. Pursuant to our law to which defendants submitted to obtain temporary custody of the child, and pursuant to their agreement with plaintiff, the defendants obtained only the right to temporary physical custody. Plaintiff expressly did not relinquish her parental rights and she retained the right to custody and control of the child. Defendants' temporary physical custody was permissive, but their retention of the child became unlawful when they refused to return the child upon plaintiff's request. The fact that the child was then in the District of Columbia does not avail defendants. While a natural parent's right to refuse to consent to adoption is not as absolute in the District of Columbia as it is in California (cf. D.C. Code, § 16-304, subd. (e), and Civ. Code, §§ 224, 226b, 232), one can search District of Columbia law in vain for authority which would permit an unrelated person to detain unilaterally a child from its natural mother against her demand for custody. In short, under the PKPA defendants cannot establish jurisdiction in Washington, D.C., because they do not qualify as persons acting as parents. We hold therefore that the District of Columbia is not the home state of the child under PKPA.[4]

---

[4]The federal district court found that the District of Columbia was not the home state of the child because it was not the "State in which the child lived from birth." (28 U.S.C. § 1738A(b)(4).) Since the child had lived two days in California, "the child could not have 'lived from birth' in the District of Columbia. In determining whether the child 'lived' in California, it should be irrelevant whether the child was in a hospital or more 'traditional' home, given the almost completely dependent nature of an infant. A strict construction of where the child 'lived from birth' would be where the child existed or was alive immediately following the time of birth." (*Rogers* v. *Platt, supra,* 641 F.Supp. at p. 386.) Because of our determina-

It does not follow from this that California is the home state. As the federal district court noted, for California to be the home state the PKPA requires that the child have lived there from birth "with his parents, a parent, or a person acting as parent." It is true that under the Act a child's temporary absence from a state still counts as part of the time necessary to establish that a state is the child's home state. (28 U.S.C. § 1738A(b)(4).) And a child's home state remains his home state when he is absent from the state because of his removal or detention by a contestant. (28 U.S.C. § 1738A(c)(2)(A)(ii).) The child was born in California and plaintiff has continued to reside here. She has at all times retained the right to custody and control of the child. Nevertheless, plaintiff never saw her child after birth, signed a release a few hours later and left the hospital without the child. Under these facts, the federal court had "difficulty concluding that the infant 'lived with' the mother from birth." (*Rogers* v. *Platt, supra,* 641 F.Supp. at p. 386.) In its view, "to 'live with' someone requires a deliberate manifestation to share a common place with the person during a substantial period of the time involved. Since an infant cannot make such a manifestation, the Court must look to the mother in this situation." (*Ibid.*) We agree with that analysis and similarly conclude that California is not the home state of the child under PKPA because he never lived with plaintiff here.

Because neither California nor the District of Columbia is the home state, we turn to the "significant connection" subdivision. This subdivision applies when "[i]t appears that no other State would have jurisdiction under subparagraph (A) [the home State provision], and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships." (28 U.S.C. § 1738A(c)(2)(B).)

As we have noted, the federal court found that it was in the best interests of the child that California assume jurisdiction. The court reasoned that for purposes of the PKPA the connection with California was the most significant one. "The significant connection to California is that the child's natural mother lives in California, the mother began litigation over the child in California first, and the child was born in California." (*Rogers* v. *Platt, supra,* 641 F.Supp. at p. 387.) The court found that "[t]he most important factor compelling the conclusion that California has jurisdiction is the fact that the child was born in California and is absent from that state

---

tion that defendants were not "persons acting as parent" within the meaning of the statute, we do not reach this alternate ground.

because of his removal by defendants—although removed initially with consent which has since been revoked. The primary purpose of the PKPA is to prevent the taking of children out of state for the purpose of obtaining custody awards. While a major need for the Act was to discourage abductions by one natural parent, no wrongdoing or kidnapping is necessary for the Act's provisions to be operable." (*Id.*, at p. 388; citations omitted.) It further noted that the release form warned defendants that "the parent has the right to reclaim the child at any time prior to signing the consent to adoption. As acknowledged by the court in California, the document signed by the parties, containing the rights of the parent under California law, 'contemplates adoption in California.' " (*Ibid.*, citation omitted.) It also found that a major goal of the Act was to provide protection for the "left-behind" parent. (*Ibid.*) Finally, the court concluded that another goal of the Act, again advanced by selecting California, was that "Congress intended to dissuade parties from removing a child from one state to another and thereby taking advantage of more favorable substantive law in the second jurisdiction." (*Ibid.*, fn. omitted.)

We agree with the federal court's analysis. Defendants' removal of the child from this state was based upon their right to temporary physical custody, and their unlawful detention of the child outside of this state under the circumstances of this case cannot serve to divest California of jurisdiction under the PKPA. Accordingly, we also conclude that the child has a more significant connection with the State of California and that it and not the District of Columbia is an appropriate forum under the PKPA.

There is another reason why California is the appropriate forum in this case. Under the PKPA a state court cannot exercise jurisdiction consistent with its terms unless it has jurisdiction of the matter under its own laws. As we have noted, both California and District of Columbia have enacted the UCCJA. (Cal. Civ. Code, § 5150 et seq.; D.C. Code, § 16-4501 et seq.) Under section 8 of the UCCJA (Cal. Civ. Code, § 5157; D.C. Code, § 16-4511), a court should decline to exercise jurisdiction in a petition for an initial custody order if the petitioner has wrongfully taken the child from another jurisdiction or has engaged in similar reprehensible conduct, unless an exercise of jurisdiction is just and proper under the circumstances. Since the purpose of the uniform act is to deter abductions and other unlawful conduct, it is held that a claimant cannot be permitted to rely upon his or her wrongful conduct in order to establish jurisdiction in a foreign court. (*In re Marriage of Hopson* (1980) 110 Cal.App.3d 884, 897 [168 Cal.Rptr. 345]; *Neal* v. *Superior Court* (1978) 84 Cal.App.3d 847, 850 [148 Cal.Rptr. 841].)

Defendants suggest that litigation in the District of Columbia is proper because plaintiff permitted her child to be taken there. It is not clear that

plaintiff was aware that defendants intended to remove the child from California but even if she were aware of that fact, it would be irrelevant. The UCCJA was intended to prevent unlawful detention of a child as well as abduction. (Cal. Civ. Code, § 5157, subd. (2); D.C. Code, § 16-4511, subd. (b).) That also is a purpose of the federal PKPA. (See Pub. L. No. 96-611, § 7, subd. (a)(3).) Plaintiff did nothing unlawful or reprehensible in permitting her child to be temporarily taken to Washington, D.C., while retaining all parental rights to custody and control of the child. But defendants behaved unlawfully when they refused to return the child to plaintiff's custody upon her request. When plaintiff commenced legal action to compel the return of her child, the defendants turned to the courts of their jurisdiction in order to gain a home court advantage for the next skirmish. (See *Neal* v. *Superior Court, supra,* 84 Cal.App.3d at p. 850.) The sole basis upon which defendants can assert jurisdiction in the District of Columbia is that the child has been living there. However, the only reason the child has been living in there is because of defendants' unlawful detention of him against his mother's right to custody. To permit the defendants to obtain the home court advantage in this manner would directly contravene the purposes of both the UCCJA and the federal PKPA.

For these reasons we conclude that under the circumstances present in this case California is the only appropriate jurisdiction to litigate this child custody dispute. The trial court, therefore, did not err in refusing to grant defendants' motion to quash the service of summons.

The order of the trial court is affirmed.

Sims, J., and Park, J.,* concurred.

---

* Assigned by the Chairperson of the Judicial Council.

APPENDIX

THE ACT

1738A. Full faith and credit given to child custody determinations—

(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

(b) As used in this section, the term—

(1) "child" means a person under the age of eighteen;

(2) "contestant" means a person, including a parent, who claims a right to custody or visitation of a child;

(3) "custody determination" means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications;

(4) "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;

(5) "modification" and "modify" refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;

(6) "person acting as a parent" means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody;

(7) "physical custody" means actual possession and control of a child; and

(8) "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.

(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if—

(1) such court has jurisdiction under the law of such State; and

(2) one of the following conditions is met:

(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

(B)(i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;

(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child and of any contestant.

(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental rights have not been previously terminated and any person who has physical custody of a child.

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if—

(1) it has jurisdiction to make such a child custody determination; and

(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.