JOSE R. GARCIA, APPELLANT, V.
MARIA G. RUBIO, APPELLEE.

670 N.W.2d 475

Filed October 28, 2003.   No. A-02-1397.

John D. Feller and Sam Houston, of Feller & Houston, for appellant.

Adam J. Sipple, of Johnson & Mock, for appellee.

HANNON and INBODY, Judges, and BUCKLEY, District Judge, Retired.

HANNON, Judge.

In the face of an order from a court in the State of Washington which awarded temporary custody of one of Maria G. Rubio's children to the appellant, Jose R. Garcia, the district court for Cuming County, Nebraska, determined that the Washington court no longer had exclusive jurisdiction of the custody dispute and awarded custody of the child to Rubio. Garcia appeals, alleging that the district court erred in that it assumed jurisdiction of the custody proceeding without communicating with the Washington court and did not find that the Washington court did not have

jurisdiction. We conclude that under Nebraska case law, it is not error for a Nebraska judge not to communicate with a judge of a court of another state where a custody proceeding might be pending and that a person whose only claim to a child is having had possession of the child in the recent past with a parent's permission is not a person who has been acting as a parent under the Uniform Child Custody Jurisdiction Act (UCCJA). As such, Garcia's filing of a petition in a Washington state court did not entitle that court to exercise jurisdiction over a parent and child in Nebraska. Accordingly, we affirm.

## BACKGROUND

Rubio gave birth to a child, Edward Rubio, on March 23, 2000, in West Point, Cuming County, Nebraska. In October 2000, Rubio allowed Garcia to pick Edward up in Nebraska and take him to Washington to live with Garcia and his family. Edward lived there with them until around September 2, 2001, when Rubio went to Washington and took Edward back to West Point. On September 25, Garcia filed a "Petition for Establishment of Parentage" in the Superior Court for Franklin County, Washington. Therein he alleged that Edward was born on March 23, 2000, that Rubio was Edward's mother, and that he was Edward's "presumed father." Garcia further alleged that he resided in the State of Washington, that Edward resided with Rubio at the time (he did not allege where Edward and Rubio were located), that Edward was entitled to financial support and health insurance coverage, and that it was in Edward's best interests to obtain a judicial determination of Edward's parentage and residential placement. The Washington court record shows that a summons was issued on September 25, 2001, and duly served on Rubio in Cuming County on November 19. Rubio filed a "Response to Petition for Establishment of Parentage" in that case on January 14, 2002, wherein she denied that Garcia was the father and alleged that the Washington court was without jurisdiction.

The record shows that on January 23, 2002, Garcia's lawyer filed a motion for default accompanied by a request for the immediate custody of Edward and gave notice in the Washington court of a February 4 hearing on the matter. The record does not show that any advance notice of that hearing was served on Rubio. The

temporary order upon which Garcia rests his claim for custody was issued by the Washington court on February 4. The order awarded Garcia "immediate residential placement of his son, Edward," and ordered any law enforcement officials in the State of Nebraska to assist him in obtaining custody of Edward.

On April 12, 2002, Garcia filed the proceedings from the State of Washington in the Cuming County District Court, registered the Washington court's judgment, and sought to enforce that judgment by contempt proceedings in Cuming County. On July 18, Rubio filed her "Verified Petition and Application to Vacate or Modify." Therein she alleged several reasons why the State of Washington did not have jurisdiction of Edward and moved to set aside the Washington court's custody order. Both matters came on for trial together on November 1, but Garcia's counsel dismissed the contempt proceedings at the beginning of the trial.

At the trial, Rubio testified that Edward's father is a resident of Washington, that Edward's father is not Garcia, and that she had not yet met Garcia at the time Edward was conceived. Rubio testified that when she and Garcia began dating, Rubio informed Garcia that she was pregnant. Documents showed that genetic testing was conducted in July 2002 by Identity Genetics, Inc., and that the testing confirmed that Garcia was excluded as the biological father of Edward.

Rubio testified that she and Garcia moved to Nebraska in January 2000. Garcia left Nebraska shortly after Edward was born on March 23. Rubio testified that due to problems she was having in caring for her children, Garcia returned to Nebraska in October and took Edward to live with him and his parents in Washington. Rubio solved her problems and went to Washington to take Edward back in September 2001, without objection from Garcia. Rubio testified that Edward has been with her in Nebraska since "the beginning of September 2001." Rubio further testified that Edward has become close to his brothers and sisters and that she did not think it to be in Edward's best interests to be taken away from her and from his siblings. Rubio testified that Edward never asks about Garcia. She testified that she was served with the papers in which Garcia sought the Washington court's temporary order of custody, but not until after the hearing date. We have not

summarized much of Rubio's testimony because we regard it as unnecessary to the resolution of this appeal. Garcia did not appear or testify at the Nebraska trial of this matter.

At the close of the direct examination of Rubio, Garcia's counsel moved to dismiss for lack of jurisdiction upon the basis of the previously filed proceedings in Washington. Rubio's counsel resisted upon the basis that the Washington state proceeding was improper. The record reflects no written or oral motion by Garcia's counsel for the judge to contact the court in Washington.

After the trial, the court entered an order in which it found that Nebraska was Edward's home state and that "even if the State of Washington properly exercised jurisdiction previously, that state no longer ha[d] exclusive jurisdiction under the provisions of the [NCCJA]." It also found that Garcia was not the natural father of Edward, that Rubio was not in default in the Washington court, and that since the beginning of September 2001, Edward had been in the custody of his natural mother, Rubio, in West Point. The court modified the Washington state order to award custody of Edward to Rubio. Garcia appeals.

## ASSIGNMENTS OF ERROR

Garcia alleges, simplified, that the Cuming County District Court erred (1) in assuming jurisdiction to modify the Washington state court's custody order without communicating with that court and (2) in modifying the Washington state court's custody order without finding that that court did not have jurisdiction.

## STANDARD OF REVIEW

■ When a jurisdictional question does not involve a factual dispute, determination of the issue is a matter of law which requires an appellate court to reach a conclusion independent of that of the trial court. *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994).

## ANALYSIS

Garcia's only claim to Edward was that as of approximately a month before he filed the action in the Washington court, Edward had lived with him with Rubio's permission for nearly a year, Rubio's having taken Edward back to Nebraska about a month before that action was filed. Garcia argues that under Neb. Rev.

Stat. § 43-1206 (Reissue 1998), the Nebraska trial judge was required to contact a Washington judicial official because the Nebraska judge had notice that proceedings concerning Edward were pending in the Washington court. Section 43-1206(2) provides that before a Nebraska court may entertain a custody proceeding, the court must search the jurisdictional information required to be supplied by the parties under Neb. Rev. Stat. § 43-1209 (Reissue 1998). Section 43-1206(2) then goes on to provide that if the Nebraska court has reason to believe that proceedings regarding a child at issue may be pending in another state, the court shall contact the court of that other state. The words of § 43-1206 specifically provide that a Nebraska trial court "shall" contact a court in a state such as Washington under such circumstances. However, upon the basis of using a construction that would save the constitutionality of that statute, and recognizing the inherent danger of a trial judge's taking part in discovery and consultation concerning a matter to be litigated before him or her, the Nebraska Supreme Court has concluded that the instruction to contact the out-of-state court is not mandatory but merely directory. See *State ex rel. Grape v. Zach, supra.* We regard *Zach* as controlling, and we therefore conclude that the trial court did not err by not contacting the Washington court.

■ Garcia also argues that the trial court erred in making no finding that the Washington court did not have jurisdiction. The trial court did find that Nebraska had jurisdiction, and it found that even if the Washington court had had jurisdiction, it no longer had exclusive jurisdiction. We believe that the issues in this case must be analyzed under the UCCJA, as adopted by Nebraska in the Nebraska Child Custody Jurisdiction Act (NCCJA), Neb. Rev. Stat. §§ 43-1201 to 43-1225 (Reissue 1998), and by Washington in Wash. Rev. Code Ann. §§ 26.27.010 to 26.27.930 (West 1997 & Cum. Supp. 2003), as well as under the federal Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A (1994). We have found that at least to the extent of the issues of this case, both states have adopted the same provisions of the UCCJA, and that act determines when the courts of the various states should or should not exercise jurisdiction in child custody matters. The PKPA may be summarized as providing that when a court of one state exercises jurisdiction in accordance

with the UCCJA, its orders on custody are entitled to full faith and credit in other states.

During the hearing in the Nebraska court, Garcia abandoned his effort to have the Washington court's order enforced via contempt proceedings; therefore, we need not consider whether that order would be entitled to full faith and credit. However, the PKPA still has a bearing on this case. Subsection (g) of the PKPA provides:

> A court of a State shall not exercise jurisdiction in any proceeding for a custody or visitation determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody or visitation determination.

Washington's § 26.27.201 and Nebraska's § 43-1203 define the situation in which the courts of Washington and Nebraska may take jurisdiction of a custody matter. Section 43-1206(1) provides that Nebraska courts shall not exercise jurisdiction under the NCCJA "if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with [the NCCJA]," unless the proceeding is stayed by the court of the other state, which it was not in this case. In short, the Nebraska trial court should not have exercised jurisdiction if the custody proceeding concerning Edward was properly pending in the Washington state court, and that depends upon whether the Washington court had jurisdiction of the proceedings filed by Garcia.

Nebraska's § 43-1203 and Washington's § 26.27.201 (as well as Washington's § 26.27.030, which was repealed in favor of § 26.27.201) state that a proper court of Nebraska or Washington state has jurisdiction to make child custody determinations if

> [t]his state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this state.

§ 43-1203(1)(a). Accord §§ 26.27.030(1)(a) and 26.27.201(1)(a). Those statutes also list other bases of jurisdiction, such as the child's best interests, the physical presence of the child in the state, and that it appears that no other state would have jurisdiction; but there is no basis for a claim of jurisdiction for the State of Washington under them in this case, and we will therefore limit our inquiry to the subsection quoted above.

■ "Home state" is defined in §§ 43-1202 and 26.27.021 (as well as § 26.27.020, repealed in favor of § 26.27.021) as

> the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons shall be counted as part of the six-month or other period.

§ 43-1202(5). Accord §§ 26.27.020(5) and 26.27.021(7).

Under these rules, Nebraska would clearly have been Edward's home state when Rubio filed her petition in the Cuming County District Court. However, the controlling question is whether the above provision was a basis for the jurisdiction of the Washington court when the proceeding was filed there on September 25, 2001.

Under the above provision, Washington was clearly not the state where Edward lived when Garcia filed the petition on September 25, 2001. However, it could still be considered the home state under subsection (ii) of § 43-1203(1)(a) if Washington was Edward's home state within 6 months before September 25, if Edward's absence was due to removal or retention by a person claiming his or her right to custody or for other reasons, and if a parent or person acting as parent continued to live in Washington. The question then becomes whether Garcia is deemed to have been "a person acting as parent." *Id.*

■ Nebraska's § 43-1202(9) and Washington's § 26.27.020(9) (the latter not repealed in favor of § 26.27.021(13)) both define "Person acting as parent" as "a person, other than a parent, who has physical custody of a child and who [either has] been awarded custody by a court or claims a right to custody." Accord § 26.27.021(13). Since while Edward was in Washington state,

no court had awarded his custody to Garcia, the answer to the above question depends on whether Garcia claimed the right to custody.

Garcia did not allege that he had been awarded custody by any court in the documents he filed. He did not allege that Rubio was unfit. He did not directly allege that it was in Edward's best interests that he be awarded custody, but his claims and requests at best might be interpreted as a claim to that effect. His allegations of interest, such as having had intercourse with Rubio, his claim as a "presumed father," et cetera, are simply not recognized as bases for claiming the custody of a child, particularly against the admitted fact the person in possession of the child is the parent. We find no Nebraska cases on the question of the jurisdiction of a court over custody proceedings against a nonresident parent and child upon the petition of a resident whose only interest is having had possession of the child with permission of the parent; but other courts have considered cases where the jurisdiction of a court was dependent upon the fact that a person had custody but held no claim of a legal right to that custody.

In *Rogers v. Platt*, 199 Cal. App. 3d 1204, 245 Cal. Rptr. 532 (1988), a mother living in California gave birth in that state to the child in question in June 1985, and the day after the child's birth, she signed a release allowing the hospital to give temporary custody of the child to the defendants, who lived in Washington, D.C. The next day, the defendants returned to Washington, D.C., with the child. The mother did not execute a relinquishment or a consent to adopt. Within a few days, the mother changed her mind and called the defendants, asking for the return of the child. They refused to return the child, and on November 21, the mother had a California court issue a writ of habeas corpus, but no service was obtained. The defendants instituted an action in the Superior Court of the District of Columbia. Both courts asserted jurisdiction. Litigation in the federal courts in Washington, D.C., resulted in a determination that the jurisdictional issue was not a federal question. See *Rogers v. Platt*, 814 F.2d 683 (D.C. Cir. 1987) (reversing *Rogers v. Platt*, 641 F. Supp. 381 (D.D.C. 1986)). The litigation then continued in the California court, and the jurisdictional and custody issues under the UCCJA and PKPA were directly considered and decided by the California court.

■ The defendants rested their position on the notion that they were " 'a person acting as a parent.' " *Rogers v. Platt*, 199 Cal. App. 3d at 1211-12, 245 Cal. Rptr. at 537. The mother argued that they were not, alleging that they sought custody on a bald claim without any legal basis. The California court concluded that the defendants did not qualify as persons " 'acting as parents' " because prior to the commencement of the action, they did not even have a colorable claim, which that court defined as "a claim that is advanced in good faith on some plausible legal theory." *Id.* at 1212, 245 Cal. Rptr. at 537. That court stated:

> In order to remain consistent with its underlying purposes, the PKPA must be construed to require that a person have some legally recognized basis for claiming custody in order to qualify as a person acting as a parent because otherwise one of the primary purposes of the Act would be thwarted.

*Id.*

■ In *Mazur v. Mazur*, 207 A.D.2d 61, 621 N.Y.S.2d 817 (1994), the mother had given custody of her child to a cousin from California shortly after birth without the father's knowledge. The cousin took the child to California. The father started litigation in a New York court to obtain custody of the child, and in that action, the cousin maintained that under the UCCJA and PKPA, the California courts had jurisdiction because California was the child's home state. The basis of that claim was that the child had lived in California for more than 6 months with the cousin. To support that claim, the cousin maintained that she was a person acting as a parent under the UCCJA and PKPA. In refusing to adopt the cousin's claim, the *Mazur* court stated: "The fact that a parent confers temporary custody of the child upon a nonparent does not give rise to a colorable claim of right [of the nonparent] to custody." 207 A.D.2d at 65, 621 N.Y.S.2d at 820. The court concluded that as soon as the father demanded custody, the cousin did not have a colorable right to custody. It also stated:

> In our view, neither the PKPA nor the UCCJA contemplates that the natural parents of a child should be obligated to travel to a distant state and to incur great expense and inconvenience in order to litigate their superior right to custody against a nonparent who refuses to return the child to either of the natural parents.

207 A.D.2d at 66, 621 N.Y.S.2d at 820. We do not think that the PKPA or the UCCJA intended a natural parent with possession of a child in one state to be required to go to a distant state to litigate over the custody of the child with someone whose only claim to the child is having had temporary possession of the child before the child was returned to the natural parent.

■ Under Nebraska law, a nonparent acquires no custodial right to a child as against a parent simply because the parent gave the nonparent temporary custody. See *Uhing v. Uhing*, 241 Neb. 368, 488 N.W.2d 366 (1992). The rule is as follows:

> [A] court may not, in derogation of the superior right of a biological or adoptive parent, grant child custody to one who is not a biological or adoptive parent unless the biological or adoptive parent is unfit to have child custody or has legally lost the parental superior right in a child.

*Stuhr v. Stuhr*, 240 Neb. 239, 246, 481 N.W.2d 212, 217 (1992).

Garcia made no claim that Rubio was unfit. The *Uhing* court stated by way of a quote:

> As the U.S. Supreme Court stated in *Quilloin* [*v. Walcott*, 434 U.S. 246, 255, 98 S. Ct. 549, 54 L. Ed. 2d 511 (1978)]: "We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' *Smith v. Organization of Foster Families*, 431 U. S. 816, 862-863 [97 S. Ct. 2094, 53 L. Ed. 2d 14] (1977) (Stewart, J., concurring in judgment)."

241 Neb. at 373, 488 N.W.2d at 370-71.

It may be argued that the law of Washington and not that of Nebraska should be used to determine Garcia's right to institute custody proceedings. We find the law of that state to be similar to that of Nebraska on that point. It recognizes a natural parent's superior right to custody. In *Custody of Nunn*, 103 Wash. App. 871, 14 P.3d 175 (2000), the court held that a nonparent has standing to commence a child custody action only if the child is not in the physical custody of one of its parents or if the party filing the action alleges that neither parent is a suitable custodian, and it concluded that a nonparent does not have standing

to seek custody of a child against a fit parent that has physical custody of the child. See, also, *Custody of Anderson*, 77 Wash. App. 261, 890 P.2d 525 (1995).

At best, Garcia made a claim that he was seeking custody which would be in Edward's best interests, but Garcia made no claim that Rubio was unfit. From the above cases, we conclude that a person whose only claim to the custody of a child is that he or she has had possession of the child for a few months in the recent past does not have a colorable right to the custody of the child and is not thereby a person acting as a parent. We also conclude that a petition by a person without a colorable right to custody of a child cannot confer the jurisdiction of a court on the child and its parent when they are living in another state. Garcia did not have or make a colorable claim, and hence, his petition could not give jurisdiction to the court of the state where he lived.

## CONCLUSION

We therefore conclude that under the UCCJA, NCCJA, and PKPA, the Washington court did not have jurisdiction of any custody proceeding for Edward. Edward was in Nebraska with Rubio for more than 6 months before she filed her action in the Cuming County District Court, and therefore, that court had jurisdiction and its order should be affirmed.

AFFIRMED.